## No. 18,415.

JOSEPH C. LENGEL, ET AL. *v.* CHESTER V. DAVIS, ET AL.

(347 P. [2d] 142)

Decided November 30, 1959.   Rehearing denied December 21, 1959.

Messrs. AKOLT, TURNQUIST, SHEPHERD & DICK, Messrs. GRUTTER & CALLAHAN, for plaintiffs in error.

Messrs. THOMAS & THOMAS, for defendants in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

THE parties appear here in reverse order of their appearance in the trial court; we refer to defendants in error as petitioners and to plaintiffs in error as respondents.

Petitioners in 1957 commenced this action seeking a decree authorizing a change in the point of diversion of the water decreed to the Ireland Ditch. Respondents appeared and filed their protest to the proposed change.

In their protest respondents deny that the Ireland Ditch exists; deny that there is any Ireland Ditch water, and allege that any water decreed to the Ireland Ditch has long since been abandoned and that no use has been made of said water for more than thirty years prior to 1954, and that any use made of said water subsequent to 1954 is in violation of vested rights of the respondents.

At the trial it was proved without question or contradiction that the District Court of Arapahoe County, in a general adjudication proceeding to adjudicate water rights in Water District No. 49, entered a decree dated December 28, 1893, and awarded to the Ireland Ditch three cubic feet of water per second of time to be taken from the south fork of the Republican River as of date November 1885; that in 1938 there was filed in the District Court of Kit Carson County an action, No. 2985, "IN THE MATTER OF THE ADJUDICATION OF PRIORITIES OF WATER RIGHTS IN WATER DISTRICT NO. 49 IN THE STATE OF COLORADO"; that a decree was entered by said court on September 8, 1938, which, among other things, provided that the decree

should not be considered as in any manner affecting rights adjudicated by the District Court of Arapahoe County on December 28, 1893. Petitioners did not, nor did any claimants to the Ireland water, participate in the 1938 adjudication, and nothing therein adjudicated changed or purported to affect in any way the Ireland water.

. There was testimony to the effect that at some time between 1885 and 1903 the dam and point of diversion of the Ireland Ditch had been moved from its original location:

"1100 feet south of a point 450 feet west of the northeast corner of the southeast quarter of Section thirty, township five, South, Range forty-four, West of the Sixth Principal Meridian" upstream about three-fourths of a mile to a point: "whence the west quarter corner of section thirty, township five, South, Range forty-four, West of the Sixth Principal Meridian, bears north 20° 10' East a distance of 2346 feet."

This last mentioned point is the point which petitioners seek court authorization to use as the point of diversion of the Ireland water. This point is also the point at which waters decreed to the Boden Ditch and Enlargement and Extension of the Boden Ditch are presently being diverted pursuant to the aforementioned 1938 decree.

All parties agree that the Republican River is often at flood stage and due to the sandy soil shifts its channel, and as a consequence diversion dams of temporary construction have often washed out and been replaced at various points so that water could be diverted; likewise ditches have been relocated at times due to such conditions. Prior to 1951, there had never been a water commissioner in Water District No. 49; there were no measuring devices; water was diverted through the various ditches without regard to the amounts adjudicated or pricrities and used by owners under the ditches on a turn-about basis, the one most in need coming first.

Surprisingly this good neighbor policy was accepted by all ditches and users and there was no discord. Since the appointment of a water commissioner in 1951, installation of measuring devices, and an influx of new population dedicated to modern and intensive farming methods, there has been an abundance of discord.

When the Ireland Ditch point of diversion was moved upstream, a new ditch was constructed, called the *Ireland Feeder Ditch,* leading from the new point of diversion to a point on the original Ireland Ditch; the portion of the original Ireland Ditch above this junction point was abandoned.

In 1907 there was constructed the Boden Ditch, which used as its point of diversion the diversion point of the Ireland Feeder Ditch. The Boden Ditch was constructed on ground higher than that on which the Ireland Ditch was constructed. The Boden Ditch by the 1938 decree was awarded Priority No. 37 as of January 16, 1907, for 2.6 cubic feet of water per second of time and its point of diversion was fixed as that now sought by the Ireland Ditch. The 1938 decree also awarded to the "Enlargement and Extension of the Boden Ditch" Priority No. 47 as of May 15, 1926, for nine cubic feet of water per second of time with the same point of diversion as that of the Boden Ditch.

There was evidence to the effect that the owners of the Ireland Feeder Ditch, the Ireland Ditch and the water decreed to it on the one hand, and the owners of the Boden Ditch and the Enlargement and Extension of the Boden Ditch and the waters decreed thereto on the other hand, had entered into an agreement whereby the three decreed waters would be diverted at the point of diversion of the Ireland Feeder Ditch and carried in one ditch for the mutual benefit of all concerned. This involved the use of portions of each ditch and abandonment of portions of each. There was also testimony that this agreement had been carried out and that waters

decreed and evidenced by the three priorities had been so diverted, transported, and used.

There was considerable conflict in the testimony with reference to the question as to what water had been used, by whom, upon what lands, and when. The court resolved these conflicts and found in favor of the petitioners, and made detailed and specific findings on all material issues of fact presented, including a finding that there had been no abandonment of the Ireland water, and ordered that such water be permitted to flow into the Boden Ditch at the headgate and point of diversion requested, not to exceed three cubic feet of water per second of time, under the priority decreed to Ireland by the Arapahoe District Court, December 28, 1893.

Respondents are here by writ of error seeking reversal and assign several reasons therefor. They "confine this appeal to the defense of abandonment of the Ireland priority." We so confine our consideration of the matter.

Counsel urge as reversible error (a) the receiving in evidence of petitioners' Exhibit E, and (b) the refusal to admit in evidence respondents' tendered portion of the testimony offered in the 1938 adjudication concerning the Boden Ditch and Enlargement and Extension of the Boden Ditch. The tendered transcript contains testimony of Charles Boden, who appeared in this proceeding as petitioners' witness, and also testimony of Ed Boden, who appeared in this proceeding as respondents' witness; also the testimony of two other witnesses who are not parties to this proceeding or witnesses herein.

Petitioners' Exhibit E is a copy of the decree in Action No. 4278 of the District Court of Kit Carson County, entered January 14, 1955, wherein the petitioners here and one Arnold Fleer were plaintiffs and J. E. Whitten, State Engineer, was defendant, and wherein the plaintiffs sought and obtained an injunction restraining Whitten and his agents from interferring with the rights of plaintiffs to use the Ireland water through the Boden Ditch, diverted at the point of diversion decreed for

diversion of the Boden water. This decree had been entered by the Honorable John M. Meikle, who sat in the trial of the case now before us.

█ We find no prejudicial or reversible error in the admission in evidence of this exhibit. Clearly the learned trial judge did not consider .or treat this decree as an adjudication of any question then before him. In fact the trial judge in admitting the same made this crystal clear and quieted counsels' fears and objections when he said:

"THE COURT: I think it may be admitted. I don't think it is determinative of the issues involved in this case but it may be received to show the action of the Engineer and why this was done, and might have some bearing on the intent to abandon. I don't think the Court, in this proceeding, is bound by the determination of the Court in that proceeding.

"MR. DICK: All right.

"THE COURT: It will be received."

█ Likewise we find that the trial court was correct in refusing to receive in evidence testimony offered in 1938 in a proceeding wherein, among other matters, the rights of the Boden Ditch and the Enlargement and Extension of the Boden Ditch were adjudicated. The Ireland Ditch did not participate in any of that adjudication proceeding; it is not complaining of anything therein determined, and it is of course not bound by the testimony of any of the witnesses that appeared therein. As such it is inadmissible and has all of the evils of hearsay. With propriety the testimony given in 1938 might properly be used in cross-examination as a means of discrediting a witness appearing in this proceeding. Cases cited by counsel are not in point—they would be in point and the tendered testimony might be admissible if the rights of the Boden ditches were in issue.

█ Respondents next urge that the evidence of abandonment of the Ireland water was so clear and con-

vincing that the court's findings of nonabandonment cannot be sustained. A careful reading of all of the testimony, consisting of some 750 folios, admittedly somewhat conflicting, leads us to conclude, and without doubt, that the court correctly determined that there had been no abandonment, that the Ireland water had been beneficially used since 1885 for the purpose for which appropriated. This question of fact was resolved by the trial court and the court's finding is abundantly sustained by the evidence.

Counsel refer to many cases dealing with abandonment containing language to the effect that in order to have a valid appropriation there must be an application of water to a beneficial use, and that failure to so use available water for an unreasonable time, coupled with an intent, expressed or implied, to abandon, work a forfeiture or abandonment. Counsel for the respective parties are in accord as to what constitutes an abandonment, the nature of the testimony requisite to prove the same and as to on whom rests the burden of proof. They do not agree as to whether the testimony was such as to preclude any finding of nonabandonment.

Properly the court would require clear and convincing proof before concluding that a person abandoned an 1885 water right, one of the oldest on a river in an arid or semiarid area. The court's finding is amply supported by the record before us.

It may well be that there has been an abandonment of the original Ireland Ditch and the original point of diversion of the ditch. Certainly a change in the method or means of conveying appropriated water from the source of supply to the point of beneficial use is not evidence of abandonment. Likewise the unauthorized, unprotested, change of the point of diversion is not evidence of abandonment; on the other hand, it is evidence of nonabandonment.

In *Pouchoulou v. Heath,* 137 Colo. 462, 326 P. (2d) 656, this court said:

"It was claimed by plaintiffs that the headgate of the ditch on Alder Creek had been changed. The trial court observed: 'There was evidence produced that the headgate of the Gold Run Ditch on Alder Creek had been changed as the banks of the creek would crumble and change. This is not evidence of abandonment, but of intentional use, and defendants did not lose their priority right to the water in question by changing the location of the headgate.' This conclusion of the trial court is amply supported by *Corey v. Long,* 111 Colo. 146, 138 P. (2d) 903, where it was said: 'The defendants, by changing the point of diversion, or by procuring a priority decree in which the point of diversion was erroneously described, did not thereby lose the right to the water which they had theretofore appropriated and which they had continued to use.' "

See, also, *Means v. Pratt,* 138 Colo. 214, 331 P. (2d) 805.

The judgment is affirmed.