COTTON CREEK CIRCLES, LLC; Colorado Association of Home Builders; and San Luis Valley Water Co. LLC, Appellants,

v.

RIO GRANDE WATER CONSERVATION DISTRICT; Rio Grande Water Users Association; Conejos Water Conservancy District; and Dick Wolfe, in his official capacity as the State Engineer for the State of Colorado, Appellees.

No. 08SA312.

Supreme Court of Colorado,
En Banc.

Oct. 19, 2009.

Hale Friesen LLP, Allan L. Hale, Richard A. Westfall, Peter J. Krumholz, Trout, Raley, Montano, Witwer & Freeman, PC, Bennett Raley, Lisa Thompson, Denver, Colorado, Attorneys for Appellants, Cotton Creek Circles, LLC and Colorado Association of Home Builders.

Kamlet Shepherd & Reichert LLP, Stephen D. Gurr, John D. Mereness, Denver, Colorado, Attorneys for Appellant, San Luis Valley Water Co. LLC.

Hill & Robbins, P.C., David W. Robbins, Dennis M. Montgomery, Ingrid C. Barrier, Denver, Colorado, Attorneys for Appellees, Rio Grande Water Conservation District.

Carlson, Hammond & Paddock, LLC, William A. Paddock, Beth Ann J. Parsons, Denver, Colorado, Attorneys for Appellees, Rio Grande Water Users Association.

Moses Wittemyer Harrison & Woodruff, P.C., Richard J. Mehren, Boulder, Colorado, Attorneys for Appellees, Conejos Water Conservancy District.

John W. Suthers, Attorney General, Peter J. Ampe, First Assistant Attorney general, Denver, Colorado, Attorneys for Appellees, Dick Wolfe, in his official capacity as the State Engineer for the State of Colorado.

Chief Justice MULLARKEY delivered the opinion of the Court.

## I. Introduction

This is an appeal from a water court's Order Allowing Costs and Setting Further Proceedings Concerning the Costs ("Order Allowing Costs") and a water court's subsequent Order Awarding Costs following a proceeding pursuant to section 37–92–501(3)(a), C.R.S. (2009), to resolve protests to proposed rules and regulations promulgated by the state engineer under the water power rules of section 37–92–501(1), C.R.S. (2009). Appellants Cotton Creek Circles, LLC, Colorado Association of Home Builders, and San Luis Valley Water Co. LLC (collectively "the Objectors") assert that the water court erred in allowing costs following this type of proceeding or alternatively that if an award of costs is allowed, the water court abused its discretion in setting the award under the facts of this case. We affirm the water court's order allowing costs, but reverse in part and remand to the water court to recalculate the amount of the award.

## II. Statement of the Facts

In 1998, the General Assembly enacted House Bill 98–1011, which mandated a study of and subsequent propagation of rules for new withdrawal of ground water in Water Division 3. This mandate led to the Rio Grande Decision Support System ("RGDSS") study and the resultant development of the RGDSS model. In 2004, the General Assembly enacted Senate Bill 04–222, which also addressed rules to be promulgated by the state engineer and required certain principles to be considered when promulgating rules to govern the use of underground water in Division 3. Pursuant to those legislative mandates, the state engineer promulgated and filed the rules originally at issue in this case. In 2004, the water court accepted the rules pursuant to section 37–92–501(2)(g), C.R.S. (2009), of the Water Right Determination and Administration Act of 1969 ("1969 Act").

Subsequently, several entities, including the Objectors, filed statements of opposition to the rules with the water court pursuant to section 37–92–501(3)(a). The Objectors challenged the rules on several grounds, including challenges based on scientific grounds and the accuracy of the RGDSS model used, as well as the constitutionality of the underlying statutes on which the rules were based. Several other entities, including the Rio Grande Water Conservation District, the Rio Grande Water Users Association, and the Conejos Water Conservancy District (collectively "the Proponents") filed "statements in opposition" which supported the rules and the position of the state engineer. In 2006, the water court issued its ruling upholding the rules. Cotton Creek Circles appealed to this court, which affirmed the water court's decision. *Simpson v. Cotton Creek Circles*, 181 P.3d 252 (Colo.2008).

For purposes of this case, the state engineer as well as the Proponents filed bills of costs during the pendency of the merits appeal detailed above, each asserting that they were a "prevailing party" under C.R.C.P. 54(d). In contrast, the Objectors asserted that an award of costs was not proper in this case. First, the Objectors argued that, as a matter of law, costs cannot be awarded because they are not contemplated under section 37–92–501(3)(a). Second, the Objectors contended that even if costs were appropriately awarded, only the state engineer qualified as a "prevailing party" for purposes of C.R.C.P. 54(d), and therefore the water court could only award costs to the state engineer and not the Proponents.

The water court rejected these arguments and held in the Order Allowing Costs that the state engineer as well as the Proponents were entitled to costs. The water court further ordered the Objectors to file additional objections as to the reasonableness and amount of costs and allowed the Proponents to reply to such objections. Accordingly, Cotton Creek, one of the Objectors, filed a brief challenging the bills of costs on several grounds, in which San Luis Valley Water Co. LLC, also joined. The Proponents followed by filing individual replies. The water court held a hearing on Cotton Creek's objections at which Cotton Creek, the state engineer, and the Proponents all appeared through counsel. Cotton Creek argued that with the exception of the state engineer, the other

Proponents had failed to provide sufficient underlying materials supporting their bills of costs and therefore the water court could not assess the reasonableness of the claimed costs. After some additional time to gather supplementary documentation, the water court issued an order (the Order Awarding Costs) concluding that all the costs submitted were reasonable and necessary. However, the water court exercised its discretion and reduced the costs by one-third for public policy concerns. In total, the costs awarded against the Objectors amounted to $310,763.30, of which $215,586.04 was awarded to the Proponents and the remainder to the state engineer. The Objectors now appeal that decision.

### III. Standard of Review

■ This proceeding presents both questions of law and questions of fact. The water court's legal conclusions are reviewed de novo. *Cherokee Metro. Dist. v. Simpson,* 148 P.3d 142, 150 (Colo.2006). These include: (1) whether it is acceptable to award costs under C.R.C.P. 54(d) in a proceeding to resolve protests against proposed rules and regulations promulgated by the state engineer under section 37–92–501(1); and (2) whether the Proponents may be considered "prevailing parties" for the purposes of C.R.C.P. 54(d). However, the water court's factual findings are binding on appeal "unless they are so clearly erroneous as to find no support in the record." *City of Black Hawk v. City of Central,* 97 P.3d 951, 956 (Colo. 2004) (quoting *In re Gibbs,* 856 P.2d 798, 801 (Colo.1993)). Therefore, if the water court was correct in its legal conclusion that an award of costs is acceptable in a proceeding of this kind, and that costs may be awarded to entities other than the state engineer, the water court's determination of the amount of costs will not be overturned absent an abuse of discretion. *Fort Morgan Reservoir & Irrigation Co. v. Groundwater Appropriators of the S. Platte River Basin, Inc.,* 85 P.3d 536, 541 (Colo.2004).

### IV. Analysis

There are four main issues before us in this case. First, whether the water court erred in awarding costs under C.R.C.P. 54(d), following a proceeding to resolve protests against proposed rules and regulations promulgated by the state engineer. Second, whether the water court erred in its determination that the Proponents are "prevailing parties" under C.R.C.P. 54(d) and therefore entitled to costs. Third, whether the water court abused its discretion in awarding costs despite its determination that the state engineer and the Proponents would have had to put on a substantial prima facie case even in the absence of the Objectors' protest. Lastly, whether the water court abused its discretion in awarding two-thirds of the costs against the Objectors after stating the proceedings would have taken at least one-third less time in the absence of the Objectors' protests. We address each of these issues in order.

### A. Applicability of C.R.C.P. 54(d) to Proceedings to Resolve Protests against Proposed Water Management Rules

■ This case is governed by section 37–92–501(3)(a), which provides that the water court shall hear and determine protests to rules issued by the state engineer in the same manner as in water adjudication proceedings. The Objectors assert that the water court lacked the discretion to award costs pursuant to C.R.C.P. 54(d) in this context. Specifically, they assert that: (1) this court's precedent suggests that costs are not awardable because this case constitutes a rulemaking proceeding; and (2) awarding costs in this case will result in unfair public policy and discourage participation in the rulemaking process contrary to the intent of the General Assembly. In contrast, the Proponents contend that C.R.C.P. 54(d) applies to this proceeding as it does to any contested adjudication.

Section 37–92–501(1) of the 1969 Act provides that "[t]he state engineer may adopt rules and regulations to assist in, but not as a prerequisite to, the performance of [the state engineer's] foregoing duties." Rules and regulations are designed to help administer tributary ground water to ensure that enforcement is not arbitrary, that the rules will prevent material injury to senior appropria-

tors, and that the rules take into consideration the means for achieving optimum use of ground water. *Alamosa–La Jara Water Users Protection Ass'n v. Gould,* 674 P.2d 914, 929–35 (Colo.1983).

In general, Colorado has a long history of handling water issues through adjudication rather than through administrative proceedings. Dating back to the Adjudication Acts of 1879 and 1881, Colorado has provided for judicial proceedings to administer water rights. 1879 Colo. Sess. Laws 99–100; 1881 Colo. Sess. Laws 142. Although most other states direct water issues through administrative procedures, in drafting the 1969 Act, the General Assembly decided to maintain the system of adjudicative proceedings to handle the determination of water rights. Moreover, as the water court noted, the General Assembly did not require the state engineer to conduct a public hearing on proposed rules and regulations such as is required by the Colorado Administrative Procedure Act ("CAPA"). §§ 24–4–101 to –108, C.R.S. (2009).[1] Rather, the 1969 Act, in section 37–92–304, provides the opportunity for interested parties to protest potential infringements on their water rights as the means to prevent unreasonable exercises of administrative discretion by the state engineer. *See Simpson v. Bijou Irrigation Co.,* 69 P.3d 50, 72 (Colo. 2003).

The Objectors are correct to note that no statute or previous case of this court has directly addressed the issue and that this type of proceeding provides the only opportunity for interested parties to have any meaningful involvement in the water rulemaking process. Nonetheless, the straightforward language of the 1969 Act and C.R.C.P. 54(d) as well as this court's precedent lead to the conclusion that costs may be awarded under C.R.C.P. 54(d) in the discretion of the water court. C.R.C.P. 54(d) states in relevant part:

Except when express provision therefore is made either in a statute of this state or in

these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs....

"Hence, in the absence of a statute or rule, 'trial courts may exercise their discretion to award costs to a prevailing party.'" *Fort Morgan,* 85 P.3d at 540 (quoting *Rossmiller v. Romero,* 625 P.2d 1029, 1030 (Colo.1981)). An introductory note to the Uniform Local Rules for All State Water Court Divisions ("Uniform Water Rules") states:

Except as expressly provided in these rules, the Colorado Rules of Civil Procedure, including the statewide practice standards set out in C.R.C.P. 121, shall apply to water court practice and procedure.

Colorado Court Rules, Chapter 36; *see also Fort Morgan,* 85 P.3d at 540.

In *Fort Morgan,* this court addressed the water court's ability to award costs to "prevailing parties" under C.R.C.P 54(d) in contested proceedings under the 1969 Act. 85 P.3d 536. In that case, we stated:

While the Uniform Water Rules do mention and limit specific provisions of the civil rules, Rule 54(d) gets no special attention indicating it does not apply or should be applied only in limited circumstances. Similarly, there is no provision in the 1969 Act either permitting or prohibiting the award of costs to a "prevailing party" in water court proceedings.

*Id.* at 540. In coming to the conclusion that an award of costs was acceptable, the *Fort Morgan* court largely focused on the fact that the proceeding before the water court in that case carried "many of the indicia of a contested civil litigation." *Id.* at 541. Therefore, the court concluded, "it rests within the sound discretion of the trial court to determine whether, at the trial's conclusion, there is a prevailing party entitled to costs." *Id.*

Although *Fort Morgan* dealt with an award of costs in a water rights application, we find the reasoning employed to come to the conclusion in that case persuasive under

---

1. CAPA generally governs the adoption of rules and regulations by agencies of the executive branch. However, the promulgation of rules and regulations to administer ground water is expressly excluded from CAPA by the 1969 Act. *See*

*generally Simpson v. Cotton Creek Circles,* 181 P.3d 252 (Colo.2008). Because these proceedings are not governed by CAPA, analogies to proceedings that occur under the federal Administrative Procedure Act are not instructive.

the circumstances of this case. In fact, section 37–92–501(3)(a) explicitly states that a party wishing to protest proposed rules and regulations is to follow the trial-like procedure codified in section 37–92–304, the section governing protests to a water rights application. However, we do note that this type of proceeding is *sui generis* in that it is partly a rulemaking procedure and partly an adjudicative proceeding. The Objectors assert that this case should be viewed as a quasi-legislative rulemaking proceeding because it contains more of an administrative bent than the situation presented in *Fort Morgan*. However, we find that this case still closely resembles a contested adjudication, and certainly is not so quasi-legislative in nature as to prohibit an award of costs.

As the water court noted in the Order Allowing Costs, the proceedings before it "were certainly litigation." The proceedings required twenty-six days of hearings and included fifteen expert witnesses. Moreover, there were extensive pre-trial hearings, pre-trial motions and broad discovery. Unlike a quasi-legislative proceeding, the rules at issue were proposed to the water court and litigated through the use of witness testimony rather than on review of an administrative record. At the end of the proceedings, the water court came to the conclusion that the rules promulgated by the state engineer were constitutional—a decision that was upheld by this court. *Cotton Creek Circles,* 181 P.3d 252. Similar to *Fort Morgan,* the underlying process at issue was "not intrinsically inconsistent with the 'prevailing party' concept inherent in Rule 54(d)." 85 P.3d at 541. Therefore, we find that an award of costs under C.R.C.P. 54(d) is neither inconsistent nor in conflict with the practice and procedure provided by the applicable statute in this case.

Although such a proceeding does provide the only meaningful opportunity for interested parties to affect the water rulemaking process, and as such there may be policy reasons why the method employed in this proceeding is not ideally suited to resolve disputes concerning proposed rules and regulations under the 1969 Act, it is nonetheless the method established by the General Assembly. It is not the role of the court to overrule a legislative policy determination when the underlying statutory language unambiguously directs us otherwise. Furthermore, awarding costs in this case is not inherently contrary to the General Assembly's intent behind the 1969 Act. For instance, the Objectors' contention that allowing costs in this case will result in a significant chilling effect may be balanced by the competing policy concern that "time is of the essence" in this type of proceeding. § 37–92–501(2)(g). Therefore, we find that, although awarding costs may be somewhat unusual in proceedings to resolve protests to proposed rules and regulations promulgated by the state engineer under section 37–92–501(1), it is within the discretion of the water court to award costs under C.R.C.P. 54(d).

## B. Determination of "Prevailing Parties" in Such Proceedings

As noted, C.R.C.P. 54(d) limits an award of costs to "prevailing parties." Having settled that an award of costs is acceptable in this type of proceeding, we must address whether the water court correctly concluded that the Proponents qualify as "prevailing parties" and are therefore entitled to costs. The Objectors make two arguments asserting that even if an award of costs is appropriate in this case, only the state engineer, not the Proponents, were eligible. First, the Objectors argue that awarding costs to the Proponents ignores the plain language of section 37–92–501. Second, the Objectors contend that the Proponents do not meet the definition of "prevailing party" under the applicable test. In contrast, the water court found that the Proponents were "prevailing parties" because they were "intimately involved in the development of the RGDSS and its groundwater model and [because] they supported the Rules as part of a comprehensive vision that they and the state engineer share for the maximum utilization of the water in the basin." We uphold the water court's conclusion.

The Objectors' first contention is that costs may only be awarded to the state engineer under the plain language of section 37–92–

501(1) because only the state or division engineer may adopt rules to assist in the administration of the state's waters. Moreover, they argue that because section 37–92–501(3)(a) only mentions parties desiring to protest a rule, not parties desiring to support a rule, the General Assembly could not have intended to allow an award of costs for parties in support of the state engineer's proposed rules, such as the Proponents.

We find this argument hinges on an overly technical reading of the statute and therefore is without merit. First, although section 37–92–501(1) states that only the state or division engineer may adopt rules to assist in administering the state's waters, nothing in the statute precludes other parties from becoming interested in the proposed rules and regulations and actively supporting them, as was the case here. Second, the Objectors' interpretation of 37–92–501(3)(a) ignores the fact that while the provision only explicitly mentions protests to proposed rules, it states that any such protests should be brought in the same manner as provided in section 37–92–304, C.R.S. (2009), for the protest of a ruling of a referee. In turn, section 37–92–304(2) states that "any person ... who wishes to *protest or support* a ruling of the referee" shall file a pleading to such effect. (emphasis added); *see also Bijou*, 69 P.3d at 72 (noting that the General Assembly intended the procedures in section 37–92–304 to apply to hearings on protests to proposed rules at which all affected parties have a right to be heard). We determine, therefore, that as a general matter, affected water users are allowed to participate in this type of proceeding as either objectors or proponents.

The Objectors' second contention is that the Proponents are not prevailing parties under the applicable test. "A 'prevailing party' is one who prevails on a significant issue in the litigation and derives some of the benefits sought by the litigation." *Archer v. Farmer Bros. Co.*, 90 P.3d 228, 230 (Colo. 2004). The determination of an award of costs under C.R.C.P. 54(d), including the determination of which participants are "prevailing parties," rests in the sound discretion

of the water court. *Fort Morgan*, 85 P.3d at 540.

The Objectors contend that, because the state engineer represents the interests of Colorado, any benefit of this litigation accrues not to any particular private interests, but to the people of Colorado. Thus, the Objectors assert, any benefit derived by the Proponents was indistinguishable from the benefit derived by the state engineer.

That argument is without merit. Although the Proponents may share the same benefits as the state engineer, they obtained a benefit nonetheless. Moreover, the Objectors fail to consider that while the Proponents may have obtained the same benefits as the state engineer, their advocacy on behalf of the proposed rules, in the water court's opinion, was instrumental to that outcome. Specifically, after presiding over the entirety of the proceedings, the water court determined that the Proponents "clearly prevailed on a significant issue" because they were "intimately involved in the development of the RGDSS and its groundwater model and supported the Rules as part of a comprehensive vision that they and the state engineer share for the maximum utilization of water in the basin."

Finally, the determination that the Proponents may be entitled to costs in a general sense results from the conclusion that costs are warranted in this type of proceeding. Because the type of proceeding at issue in the present case more closely resembles a contested adjudication than a quasi-legislative rulemaking, it follows that those parties who, in the discretion of the presiding judge, prevailed on a significant issue and derived some benefits sought by the litigation may be entitled to costs. Here, the Proponents acted in concert with the state engineer to successfully defend the proposed rules and regulations from the Objectors' protests. The Proponents were thoroughly involved in the extensive proceedings at issue and expended significant time and effort in pursuing the ratification of the proposed rules and regulations. We conclude that the water court's determination that the Proponents were "prevailing parties" for purposes of C.R.C.P. 54(d) was not manifestly arbitrary,

unreasonable, or unfair. *Fort Morgan*, 85 P.3d at 541. Therefore it was not an abuse of discretion and we uphold that decision.

### C. Whether the Water Court Abused its Discretion in Awarding Costs

■ The Objectors' third main contention is that the water court abused its discretion in awarding costs because it stated that an extensive trial would have been required even in the absence of any protests by the Objectors. Specifically, they focus on the water court's statement in the Order Awarding Costs that, "even had the rules proposed been unopposed, the State and the other proponent would have had to present a very substantial prima facie case to this Court." The water court continued, stating, "[m]ost, if not all of the experts would have had to testify to a shortened but still extensive version of their opinions and bases for those opinions."

However, we conclude that this statement, while lending credence to the Objectors' argument that the costs should be reduced by some amount, does not establish that no costs should have been awarded. As discussed above, this case carried many of the indicia of a contested civil litigation. The Objectors participated in the proceedings, calling their own expert witnesses and cross-examining witnesses called by the state engineer and the Proponents. Although a complex record would still have been required regardless of participation by the Objectors, their protests did serve to extend the proceedings. As such, the water court acted within its discretion in recognizing these facts and awarding the Proponents a portion of their costs under C.R.C.P. 54(d).

### D. Whether the Water Court Abused its Discretion in its Determination of the Amount of Costs

■ The Objectors' final contention concerns the reasoning behind the water court's decision to reduce the award of costs by one-third. After a hearing on costs, the water court found that the costs submitted by the Proponents were reasonable, necessarily incurred in preparing for the trial and adequately documented. Nonetheless, the water court exercised its discretion to award less than the maximum amount allowed by statute because the court found that the circumstances justified a smaller award. Accordingly, the water court reduced the amount of costs awarded by one-third.

The Objectors argue that this decision is irrational in light of the water court's statement that "it would have taken at least one-third less time if, after initial protests, discovery, and competing expert reports, the matter would have become uncontested or if a stipulation was reached at the time of trial." The Objectors contend that the water court's award of two-thirds of the costs contradicts the court's own estimate of the time the Objectors' involvement added. Instead, they assert that because they only added an additional one-third to the time of trial, they should be responsible for only one-third of the costs. Therefore, the Objectors argue that the water court abused its discretion by awarding two-thirds of the costs and the award should be reduced by an additional one-third.

■ An abuse of discretion is committed where the court's decision is "arbitrary, unreasonable or unfair." *Fort Morgan*, 85 P.3d at 541 (citing *Hock v. New York Life Ins. Co.*, 876 P.2d 1242, 1251 (Colo.1994)). We find that the water court had valid reasons to reduce the award of costs under these circumstances. We agree that an award of costs in this type of case may discourage people with valid arguments from challenging proposed rules and regulations, and we certainly do not intend this holding to imply that costs should always be awarded in this type of proceeding. Furthermore, the water court's basic reasoning behind reducing the costs is sound. It is reasonable to separate the costs attributable to the initial proof that the state engineer and Proponents would have had to present regardless of any protest from the costs attributable to the additional proceedings necessary to resolve the protests. Moreover, we note that the water court's inclusion of the modifier "at least" arguably allows for an award of costs beyond a simple one-third of the total. However, we suspect that the water court did not accurately implement its decision that the objec-

tors increased the costs by one-third. Requiring the objectors to pay two-thirds of the proponents' costs appears to be a computational error.

Accordingly, we set aside the amount of the award and remand the case to the water court for recalculation of the amount of costs with directions to clarify the basis for its award.

## V. Conclusion

We conclude that as a general matter the water court has discretion to award costs under C.R.C.P. 54(d) in proceedings to resolve protests to proposed rules and regulations promulgated by the state engineer under section 37–92–501(1). Moreover, in this case, the water court acted within its discretion when it determined that the Proponents were "prevailing parties" for purposes of C.R.C.P. 54(d) and that the objectors should pay a portion of the proponents' costs. However, the amount of the costs awarded appears to be miscalculated. Therefore, we affirm the decision of the water court to award costs to the state engineer and the Proponents, but reverse the amount awarded and remand the case to the water court for a determination of the proper amount of the award.

Justice EID concurs in part and dissents in part, and Justice HOBBS joins in the concurrence and dissent.

Justice EID, concurring in part and dissenting in part.

The majority finds that a water court judge has the authority under C.R.C.P. 54(d) ("Rule 54(d)") to assess costs against a member of the public who protests rules proposed by the state engineer in a section 37–92–501(3)(a), C.R.S. (2009), proceeding because such a proceeding "closely resembles a contested adjudication." Maj. op. at 1103. While it may be true that a section 37–92–501(3)(a) proceeding features aspects of adjudication, it is, at bottom, a rulemaking proceeding. *See* § 37–92–501(1) ("The state engineer may *adopt rules and regulations* to assist in ... the performance of [its] duties.") (emphasis added); § 37–92–501(2) (setting forth the principles that should guide the state engineer "[i]n the adoption of such *rules and regulations*") (emphasis added); § 37–92–501(3)(a) (setting forth the procedures to be employed to "protest a *proposed rule [or] regulation*") (emphasis added); *Simpson v. Cotton Creek Circles, L.L.C.,* 181 P.3d 252, 258 (Colo.2008) (in which we affirmed the water court's decision to approve "*rules* [that are to] apply *to any new withdrawals* from the confined aquifer in Division Three") (emphases added). The state engineer and the Proponents of the rules thus did not "prevail" in contested litigation under Rule 54(d), as the majority holds. Maj. op. at 1104–05. Instead, the rules simply went into effect to govern future withdrawals from the aquifer. Furthermore, the majority acknowledges that the only way in which a member of the public may challenge proposed water rules is through a section 37–92–501(3)(a) proceeding, maj. op. at 1103, yet it allows Rule 54(d) costs to be assessed against any member of the public who chooses to participate (albeit unsuccessfully) in such a proceeding—thereby significantly chilling public participation in the rulemaking process. Because, in my view, the rulemaking nature of a section 37–92–501(3)(a) proceeding is entirely inconsistent with Rule 54(d)'s notion of awarding costs as a matter "of course to the prevailing party" in contested litigation, I respectfully dissent from that portion of the majority's opinion finding that costs may be awarded against a member of the public who participated in such a proceeding. I agree with the majority, however, that the cost award in this case must be recalculated, and accordingly join that part of the majority's opinion.

The majority places heavy reliance on the fact that the proceeding in this case featured expert witnesses, hearings, motions, and discovery—all hallmarks of litigation. Maj. op. at 1103. Yet these litigation aspects do not change the essential rulemaking character of the proceeding. For example, at the federal level, formal rulemaking under the federal Administrative Procedure Act ("APA")—wherein "rules are required by statute to be made on the record after opportunity for an agency hearing"—employs similar trial-like hearings. *See* 5 U.S.C. §§ 553(c), 556, 557

(2009); *Citizens For Free Enter. v. Dep't of Revenue,* 649 P.2d 1054, 1063 n.7 (Colo.1982) ("Formal rulemaking pursuant to 5 U.S.C. [§§] 556, 557 (1976) requires essentially trial-type procedures...."). More specifically, as with the directive in section 37–92–501(3)(a) that protests to proposed water rules be addressed in a water court hearing in the same manner as water right adjudications, the federal APA explicitly directs that formal rulemaking use many of the same procedures as used in agency adjudications. *Compare* § 37–92–501(3)(a) (stating that protests to proposed rules be considered in the same manner as adjudications of individual water rights under section 37–92–302) *with* 5 U.S.C. § 553(c) (stating that formal rulemaking employs the procedures outlined in sections 556 and 557, which are also used when an agency is engaged in adjudications under section 554). The majority's quick conclusion that the proceeding before the water court in this case "closely resemble[d] a contested adjudication" ignores the fact that trial-like procedures can be (and in this case were) used to enact rules.

We said as much in the seminal decision of *Simpson v. Bijou Irrigation Co.,* 69 P.3d 50 (Colo.2003). In *Bijou,* the court all but explicitly acknowledged that a section 37–92–501(3)(a) proceeding is just such an instance where a rulemaking process brings proposed rules into a trial-like setting for analysis and evaluation. Evaluating whether it was necessary for the water court to resolve all protests filed under section 37–92–501(3)(a) before the state engineer could make proposed rules effective, this court noted that the General Assembly adopted unique procedural safeguards to limit the discretion of the state engineer in exercising his water rule power. *Bijou,* 69 P.3d at 71–72. We explained that, although these safeguards take the form of informal notice and comment proceedings in other rulemaking contexts, with respect to water rulemaking the General Assembly provided the specific, alternative procedures under sections 37–92–501(2)(g) and 37–92–501(3). *Id.* Focusing on the fact that a section 37–92–501(3)(a) proceeding provides "the only meaningful opportunity for interested parties to protest potential infringements on their water rights created by the rules," we concluded that these proceedings must be completed before any rules may become effective. *Id.* at 72. *Bijou* highlights the fact that while the process of having a trial-like hearing before the water court is not the typical form that rulemaking takes, it nonetheless is the process chosen by the General Assembly for rulemaking by the state engineer. In other words, although the section 37–92–501(3)(a) process employs many features of litigation, such conduct is merely the final process in water rulemaking.

Perhaps more enlightening, however, than an examination of how a section 37–92–501(3)(a) proceeding is conducted is an examination of its substance, as measured in terms of its purpose and effect. *See Home Builders Ass'n of Metro. Denver v. Public Utils. Comm'n,* 720 P.2d 552, 560 (Colo.1986) (stressing that the court must look to the substance of a commission's actions to resolve the issue of whether it was acting in an adjudicative or rulemaking capacity). We have repeatedly explained that if the proceeding was meant to, or in effect does, determine policies of general applicability for the future, then it is deemed to be rulemaking. *Colo. Office of Consumer Counsel v. Mountain States Tel. & Tel. Co.,* 816 P.2d 278, 284 (Colo.1991); *see also Colo. Ground Water Comm'n v. Eagle Peak Farms, Ltd.,* 919 P.2d 212, 217 (Colo.1996); *City of Aurora v. Public Utils. Comm'n,* 785 P.2d 1280, 1286–87 (Colo.1990); *Home Builders,* 720 P.2d at 560. In contrast, proceedings that resolve issues affecting a specific party by applying previously determined rules or policies to the circumstances of a particular case are found to be adjudicatory proceedings. *E.g., Mountain States,* 816 P.2d at 284.

An examination into the purpose and effect of the proceeding in this case establishes that it was designed to, and did in fact, determine policies of general applicability consistent with a rulemaking procedure. To begin with, the General Assembly describes a section 37–92–501(3)(a) proceeding as a rulemaking proceeding. *See* § 37–92–501(1) ("The state engineer may *adopt rules and regulations* to assist in ... the performance of [its] duties.") (emphasis added); § 37–92–501(2) (setting forth the principles that should guide the

state engineer "[i]n the adoption of such *rules and regulations*") (emphasis added); § 37–92–501(3)(a) (setting forth the procedures to be employed to "protest a proposed *rule [or] regulation*") (emphasis added). In this case, the section 37–92–501(3)(a) proceeding was the final step in a process that first began with legislative directives to the state engineer requiring a comprehensive study of the confined aquifer system in Division Three and, later, the promulgation of rules governing the use of water in that division. *Cotton Creek Circles*, 181 P.3d at 257–58. Subsequent proceedings undertaken pursuant to the state engineer's water rule power, including the hearing of protests to proposed rules by the water court, were informed by this broad purpose of promulgating such rules generally applicable to the future use of water in Division Three. Moreover, the end result of the proceedings before the water court was the adoption of generally applicable and prospective rules. Indeed, in our earlier consideration of this case, we noted that the water court confirmed the proposed rules that were to apply "to any new withdrawals from the confined aquifer in Division Three that affect the rate or direction of movement of water in that aquifer system." *Cotton Creek Circles*, 181 P.3d at 258. We also recognized that "the [water] court denied the protests and approved the rules, making them effective upon the entry of its judgment." *Id.* at 260. In sum, a section 37–92–501(3)(a) proceeding is a rulemaking proceeding because it adopts prospective, generally applicable rules. *See Bijou*, 69 P.3d at 72 (stating that the role of the water court in a section 37–92–501(3)(a) proceeding is to evaluate the protests and proposed rules and decide whether to confirm, modify, or reverse the rules).

The prospective and generally applicable nature of the rules adopted in a section 37–92–501(3)(a) proceeding stands in stark contrast to situations in which a decision has been issued that directly affects the interests of particular parties or applies past policy decisions to a specific set of facts. *See Avi-Comm, Inc. v. Colo. Public Utils. Comm'n*, 955 P.2d 1023, 1030 (Colo.1998) (finding that commission proceeding was adjudicatory where commission applied existing law to the

facts of the case and to identifiable parties); *City & County of Denver v. Eggert*, 647 P.2d 216, 222–23 (Colo.1982) (concluding that a resolution by commissioners ordering the cease and desist of some landfill operations was not of general applicability but rather concerned the immediate parties to the landfill operations and thus was quasi-judicial in nature). A comparison to the underlying water rights proceeding in *Fort Morgan Reservoir & Irrigation Co. v. Groundwater Appropriators of the South Platte River Basin, Inc.*, 85 P.3d 536 (Colo.2004), highlights this difference. There, the decision of the water court did directly affect the interests of the particular parties involved; the court's specific task was to either grant or deny one party's application for a "water storage right," which the other party claimed would "adversely affect its vested water rights." *Id.* at 538. In contrast, the proceedings before the water court here resulted in the promulgation of prospective and generally applicable rules, not a decision affecting any particular interests or rights specifically before the water court. The majority's repeated reliance on *Fort Morgan*, maj. op. at 1102–03, is thus entirely misplaced.

Based on the fact that a section 37–92–501(3)(a) proceeding features aspects of litigation, the majority leaps to the conclusion that Rule 54(d) cost awards are appropriate. Maj. op. at 1103 (implying that the General Assembly sanctioned such awards). But again, simply because the General Assembly chose to employ many features of litigation in the rulemaking process does not change the fundamental purpose of that process—namely, the adoption of generally applicable and prospective rules.

The disconnect between the rulemaking nature of a section 37–92–501(3)(a) proceeding and an award of costs under Rule 54(d) becomes even more evident in the majority's holding that the state engineer and the Proponents received a "benefit" from the "litigation" in this case. Maj. op. at 1104. As the majority properly recognizes, a party "prevails" under Rule 54(d) if it prevails on a significant issue in the litigation and derives some of the benefits sought by the litigation. *Id.*; *see also Archer v. Farmer Bros. Co.*, 90

P.3d 228, 230 (Colo.2004). Here, the state engineer and the Proponents of the proposed rules received no "benefit" from the section 37–92–501(3)(a) proceeding as that notion is traditionally understood under Rule 54(d). Indeed, the goal in a section 37–92–501(3)(a) proceeding is not to resolve issues in the state engineer's or the Proponents' favor or to award them "benefits" they may have sought in the proceeding. Rather, the goal is to provide a forum for public participation [1] in the rulemaking process with the result that the public benefits from a more robust consideration of the proposed rules. *See Bijou*, 69 P.3d at 72 ("[T]he hearing procedures set forth in section 37–92–304 [pursuant to section 37–92–501(3)(a)] provide the only meaningful opportunity for interested parties to protest potential infringements on their water rights created by the rules."); *cf.* § 24–4–101.5, C.R.S. (2009) (requiring that rules be promulgated pursuant to the Colorado Administrative Procedure Act only after an agency "finds, after a full consideration of the effects of the agency action, that the action would benefit the public interest"); *Charnes v. Robinson*, 772 P.2d 62, 67 (Colo. 1989) (discussing the requirements for public participation and input in agency policy creation through rulemaking).

Here, the majority acknowledges that the only way in which a member of the public may challenge proposed water rules is through a section 37–92–501(3)(a) proceeding, maj. op. at 1103, yet it allows Rule 54(d) costs to be assessed against any member of the public who chooses to participate (albeit unsuccessfully) in such a proceeding—thereby significantly chilling public participation in the rulemaking process. Such robust consideration of the proposed rules is further chilled by the fact that a member of the public who successfully challenges proposed rules in a section 37–92–501(3)(a) proceeding cannot recover costs as a prevailing party under Rule 54(d) because no statute permits such recovery. *See* C.R.C.P. 54(d); *Cent. Colo. Water Conservancy Dist. v. Simpson*, 877 P.2d 335, 349 (Colo.1994). In sum, the

majority's decision today frustrates the goal of a section 37–92–501(3)(a) proceeding as envisioned by the General Assembly—that is, to act as a "safeguard[ ] against the unreasonable exercise of administrative discretion by the State Engineer." *Bijou*, 69 P.3d at 72. Accordingly, I respectfully dissent from that portion of the majority's opinion finding that costs may be assessed under Rule 54(d) against a member of the public who participates in a section 37–92–501(3)(a) proceeding.

I am authorized to state that Justice HOBBS joins this concurrence in part and dissent in part.

---

1. This goal of broad public participation and input is apparent from the proceeding itself. Instead of having the limited participation typical of litigation, a section 37–92–501(3)(a) hearing is

open to all "interested parties," including both those who oppose the state engineer's proposed rules and those who support them. *See Bijou*, 69 P.3d at 72; maj. op. at 1104.