2015 CO 17

**Dick WOLFE, P.E. State Engineer; David L. Nettles, P.E. Division Engineer, Water Division 1; and Republican River Water Conservation District, Appellants**

v.

**JIM HUTTON EDUCATIONAL FOUNDATION, Appellee**

**Supreme Court Case No. 14SA38**

Supreme Court of Colorado.

March 16, 2015

Attorneys for Appellants State Engineer and Division Engineer for Water Division 1: Cynthia H. Coffman, Attorney General, Paul L. Benington, First Assistant Attorney General, Ema I. G. Schultz, Assistant Attorney General, Denver, Colorado

Attorneys for Appellant Republican River Water Conservation District: Hill & Robbins, P.C., David W. Robbins, Peter J. Ampe, Dennis M. Montgomery, Andrew J. Rottman Denver, Colorado

Attorneys for Appellee: Porzack Browning & Bushong LLP, Steven J. Bushong, Karen L. Henderson, Boulder, Colorado

JUSTICE HOOD delivered the Opinion of the Court.

¶ 1 In this case, the State and Division 1 Engineers ("Engineers") and Republican River Water Conservation District ("RRWCD") appeal the water court's decision concerning the Tip Jack water right.

The Tip Jack water right was originally decreed to service the Tip Jack Ditch, which is part of a 4,000-acre ranch now owned and operated by the Jim Hutton Educational Foundation ("Foundation"). The Engineers added the Tip Jack water right to the 2010 Revised Decennial Abandonment List for Water Division One because they found that the Foundation had abandoned the water right. The Foundation challenged the listing. After a six-day trial, the water court concluded that the Engineers had not established by a preponderance of the evidence that Jim Hutton or the Foundation had failed to use the Tip Jack water right and that even if they had, the Foundation had rebutted the resulting presumption of abandonment. The Engineers appealed.

¶ 2 Existing law plainly establishes that if a water right holder fails to apply a water right to beneficial use for a period of ten years or more, the period of nonuse creates a rebuttable presumption that the water right holder has abandoned the right. See § 37–92–402(11), C.R.S. (2014). When the State and Division Engineers prove this statutory period of nonuse, the burden shifts to the water right holder to rebut this presumption. The issue of first impression we now address is how the presumption of abandonment applies when the water right holder continued to put decreed water to the use for which it was decreed, but nevertheless failed to divert water from the decreed diversion point for a period of ten years or more.

¶ 3 We hold that when the Engineers prove that the water right holder has not used the decreed point of diversion for ten years or more, the Engineers trigger the rebuttable presumption of abandonment under section 37–92–402(11). Once triggered, the burden shifts to the water right holder to demonstrate a lack of intent to abandon. Because the water court erroneously believed that proof of nonuse at the decreed point of diversion was insufficient to raise the presumption, it failed to require evidence excusing such nonuse in order to rebut the presumption. We therefore reverse the water court's judgment and remand for reconsideration of whether the Foundation met its bur-

den of rebutting the presumption of abandonment.[1]

## I. Facts and Procedural History

¶4 The Tip Jack water right was decreed in 1893 for 2.0 cubic feet per second ("cfs") for irrigation with an original point of diversion on the South Fork of the Republican River. In 1948, Roscoe Hutton acquired the Tip Jack water right. The following year, Roscoe filed a map and statement of claim with the State Engineer to move the diversion point because the construction of the Bonny Reservoir Dam destroyed the original diversion point. The dam was completed in 1952. But Roscoe did not file his formal application for a change in the point of diversion, which is different from a map and filing statement,[2] until the State Engineer placed the Tip Jack water right on the decennial abandonment list in 1977.

¶5 In 1978, the water court entered a decree changing the point of diversion to below Bonny Reservoir. In so doing, the court decreed that all other provisions of the original 1893 decree remained in effect, including the 2.0 cfs diversion rate, and that no other changes to the water right could be made without prior approval of the court. At the same time, the water court decreed two additional water rights—Hutton Ditches 1 and 2.

¶6 The Engineers' appeal focuses solely on the Tip Jack water right. To support their theory that Hutton[3] abandoned the Tip Jack water right, the Engineers point to Hutton's complete nonuse of the diversion point decreed in 1978. The Foundation does not dispute Hutton's nonuse. Rather, it ar-

gues that Hutton diverted both the Tip Jack and Hutton 2 water rights from the Hutton 2 diversion point. To show use, the Foundation introduced aerial photographs of a section of the Tip Jack Ditch east of Hale Road that could be serviced by the Hutton 2 ditch. Hale Road runs perpendicular to the ditch. The Foundation contends the Engineers' focus on the nonuse of the ditch west of the road was misplaced. The water court concluded that the photographs show that Hutton had maintained the Tip Jack Ditch east of the road. However, the Engineers argue that the Hutton 2 ditch pump capacity was only 4.92 cfs, meaning the pump could not physically divert both the Tip Jack water right (2.0 cfs) and the Hutton 2 water right (4.92 cfs).

¶7 Under section 37–92–401, C.R.S. (2014), the Division Engineer placed the Tip Jack water right, along with water rights in Hutton Ditches 1 and 2, on the decennial abandonment list published in July 2010. The Foundation filed a timely objection, which the Engineer denied. The Foundation then filed a timely protest with the water court.

¶8 The water court ruled in favor of the Foundation. Specifically, it held that "the Engineers have not established by a preponderance of the evidence that Jim Hutton abandoned the Tip Jack, Hutton 1 and Hutton 2 water rights." In so concluding, the court relied on the evidence of the use of the Tip Jack Ditch east of Hale Road and carefully explained why it was not persuaded by lack of diversion records, lack of electricity to the Hutton 2 pumphouse, or lack of specificity in the legal documents when describing the water rights. It further held that "even

1. The Engineers raised the following issues on appeal:
   1. Whether the water court erred in finding that the Engineers did not establish the statutory presumption of abandonment for the Tip Jack Ditch water right despite the water court's own finding that "[t]he evidence is convincing that water was never diverted into the Tip Jack Ditch from the relocated diversion point" decreed in 1978.
   2. Whether the water court erred in finding that, even if the Engineers had established the presumption of abandonment, sufficient evidence was presented to rebut the

presumption of abandonment for the Tip Jack Ditch water right.

2. A map and statement of claim was a process under prior statutes in laying out the alignment of a ditch. It demonstrated intent. But it was not a substitute for filing a claim in an adjudication.

3. The ultimate issue is whether the Foundation has abandoned the water right, but Hutton's actions—as the predecessor in interest—may influence that determination. We thus consider Hutton's use and abandonment, although the Foundation is the water right holder today.

if the Engineers showed a ten-year period of nonuse, ample evidence exist[ed] to rebut a presumption of an intent to abandon these water rights," because of the "maintenance of the ditches over the years" and several real estate transactions involving the water rights. It thus ordered the Engineers to remove the water rights from the 2010 Revised Decennial Abandonment List for Water Division One. The Engineers appeal to this court, and the RRWCD joins in the appeal.

## II. Analysis

### A. Standard of Review

¶ 9 Abandonment of a water right is a factual question that turns on the particular circumstances of the case. *City & Cnty. of Denver v. Middle Park Water Conservancy Dist.*, 925 P.2d 283, 286 (Colo.1996). A "water court's resolution of the factual issues presented will not be disturbed on appeal unless the evidence is wholly insufficient to support the decision." *Id.* But we review questions of water law and "the water court's legal conclusions de novo." *City of Englewood v. Burlington Ditch, Reservoir & Land Co.*, 235 P.3d 1061, 1066 (Colo.2010). The water court errs when it misconstrues and misapplies the law. *See Cotton Creek Circles, LLC v. Rio Grande Water Conservation Dist.*, 218 P.3d 1098, 1101 (Colo.2009).

¶ 10 Here, the primary issue is the legal significance of Hutton's failure to use the decreed diversion point. We review legal error related to this issue de novo. We review the overarching determination of abandonment for abuse of discretion.

### B. Abandonment

¶ 11 A water right is abandoned when there is nonuse and intent to abandon. *See City & Cnty. of Denver v. Snake River Water Dist.*, 788 P.2d 772, 776 (Colo.1990). Failure to apply a water right to a beneficial use for a period of ten years or more triggers a rebuttable presumption that the water

right holder intended to abandon the water right for purposes of the decennial abandonment list. § 37–92–402(11).[4] The critical aspect of this presumption is intent. *Haystack Ranch, LLC v. Fazzio*, 997 P.2d 548, 552 (Colo.2000); *see* § 37–92–103(2), C.R.S. (2014) (" 'Abandonment of a water right' means the termination of a water right in whole or in part as a result of the intent of the owner thereof to discontinue permanently the use of all or part of the water available thereunder."). The water court may infer intent circumstantially. *Haystack Ranch*, 997 P.2d at 552.

¶ 12 Once the Engineers establish the presumption of intent to abandon, the burden shifts to the water right holder to rebut the presumption. *Id.* The water right holder must produce evidence beyond mere self-serving declarations that he did not intend to abandon the water right. He must establish some fact or condition that excuses the nonuse or shows the owner's intent not to abandon the water right. *Id.* (citing *Beaver Park Water, Inc. v. City of Victor*, 649 P.2d 300, 302 (Colo.1982) ("[S]elf-serving statements of intent by the owner of the water rights are insufficient by themselves to rebut a presumption of abandonment.")).

¶ 13 Courts have identified various factors to determine whether a water right holder intended to abandon his water right, including:

(1) repair and maintenance of diversion structures; (2) attempts to put the water to beneficial use; (3) active diversion records and non-appearance of the water right on the State Engineer's abandonment list; (4) diligent efforts to sell the water right; (5) filing documents to protect, change, or preserve the right; (6) leasing the water right; and (7) economic or legal obstacles to exercising the water right.

4. Evidence of complete nonuse alone triggers the presumption of intent to abandon under section 37–92–402(11). The statute states:

[F]ailure for a period of ten years or more to apply to a beneficial use the water available under a water right when needed by the per-

son entitled to use same shall create a rebuttable presumption of abandonment of a water right with respect to the amount of such available water which has not been so used.
§ 37–92–402(11).

*E. Twin Lakes Ditches & Water Works, Inc. v. Bd. of Cnty. Comm'rs,* 76 P.3d 918, 922 (Colo.2003) (internal citations omitted). As we have explained, "[w]hile none of these factors is necessarily conclusive, their cumulative weight, as assessed by the water court, may be enough to rebut a presumption of abandonment." *Id.*

¶ 14 Under this framework, the analysis of whether the Foundation abandoned the Tip Jack water right must take place in two steps: (1) whether the Engineers met their initial burden of demonstrating nonuse for ten years or more to raise the presumption of intent to abandon; and (2) if so, whether the Foundation met its burden of rebutting that presumption with evidence excusing such nonuse or showing lack of an intent to abandon. We address each issue in turn.

### 1. Statutory Presumption Based on Failure to Use Decreed Point of Diversion

¶ 15 The water court found that "[t]he evidence presented is convincing that water was *never* diverted into the Tip Jack Ditch from the relocated diversion point". (Emphasis added.) In so finding, the court explained:

> The flow rate was only 2.0 cfs, which all of the expert witnesses involved with the case agree was insufficient to move water down ... due to the length of the ditch, the porous nature of the soil in the ditch that would result in high ditch losses, and the gradient of the ditch.

The court accepted evidence that there was no diversion structure on the South Fork of the Republican River at the relocated diversion point in the decree. Based on the elevation of the river relative to the relocated diversion point, the court explained that a pump would have been needed to move water from the river to the ditch, but "there is no evidence that a pump was ever installed or used in this area."

¶ 16 Nonuse refers to the water right—not simply the water itself. A water right is defined in terms of a specific point of diversion, and water right holders can only perfect a water right through actual use. *High Plains A & M, LLC v. Se. Colo. Water Conservancy Dist.,* 120 P.3d 710, 717 (Colo. 2005) ("[A]ppropriations of surface water and tributary ground water—whether adjudicated by a conditional, absolute, or change of water right decree—have a situs that includes *the point of diversion* and the place where the actual beneficial use occurs." (emphasis added)). Use of the decreed point of diversion is a key element of use of the water right itself. It thus follows that proving nonuse of that diversion point is proof of nonuse of the water right in question.

¶ 17 Here, the water court found that the Engineers proved that the point of diversion decreed in the 1978 change of water right proceeding had never been used to divert water to the Tip Jack Ditch. But it appears that the water court believed that nonuse at the decreed diversion point was insufficient to prove nonuse of the water right, as required to raise the presumption of abandonment. We disagree. Because the Engineers proved that over ten years of nonuse of the decreed diversion point had passed, the Engineers did not need to prove more to trigger the presumption that Hutton had abandoned the water right. The burden then shifted to the water right holder, the Foundation, to demonstrate a fact or condition excusing such nonuse or a lack of intent to abandon.

¶ 18 To be sure, our holding adds a step in the analysis. But the second step necessarily resolves an important question of burden-shifting and public policy. Once the Engineers establish nonuse of the decreed diversion point, the burden shifts to the water right holder to show use to rebut the presumption of abandonment. At that point, the water right holder stands in the better position to provide evidence of use and intent. The onus should be on a water right holder who is using an undecreed point of diversion to rebut a presumption of abandonment. Thus, we conclude that the water court erred in holding that the Engineers did not establish the statutory presumption of abandonment for the Tip Jack water right.

### 2. Evidence to Rebut the Presumption

¶ 19 Despite the prolonged nonuse of the decreed diversion point, the question remains

whether the Foundation rebutted the presumption of abandonment by proffering evidence of some fact or condition excusing nonuse or showing the Foundation's intent not to abandon.

¶ 20 The Foundation argues that it rebutted the presumption because it presented evidence that it diverted the Tip Jack water right through the Hutton 2 ditch. It argues that Jim Hutton diverted both the Tip Jack water right and the Hutton 2 water right from the Hutton 2 diversion point, where he then pumped the water into the Tip Jack Ditch and Hutton 2 laterals. The Foundation presented aerial photographs to support this assertion. The water court agreed that the Foundation presented "ample evidence to show that the Tip Jack Ditch *east* of Hale Road was maintained by Jim Hutton during the period the Engineers claim non-use of the Tip Jack water right." (Emphasis in original.)

¶ 21 In arguing that undecreed diversions are sufficient to rebut the presumption of abandonment, the Foundation cites *Lengel v. Davis*, 141 Colo. 94, 347 P.2d 142 (1959). There, we noted:

> Certainly a change in the method or means of conveying appropriated water from the source of supply to the point of beneficial use is not evidence of abandonment. Likewise the unauthorized, unprotested, change of the point of diversion is not evidence of abandonment; *on the other hand, it is evidence of nonabandonment.*

*Id.* at 146 (emphasis added).

¶ 22 The Foundation also relies on *Means v. Pratt*, 138 Colo. 214, 331 P.2d 805 (1958). In *Means*, we concluded that "one does not lose his possessory property rights in water by diverting the water at a point or points other than those decreed to him." *Id.* at 808–09. Based on this precedent, the Foundation argues that it did not lose its possessory interest in the Tip Jack water right or evidence an intent to abandon the water right because the Huttons put the water to beneficial use through a different, undecreed diversion point for over thirty years.

¶ 23 The Engineers argue that this precedent is irrelevant because we decided *Lengel* and *Means* before the 1975 enactment of the abandonment statute that created a rebuttable presumption of abandonment from nonuse. Before 1975, the court imposed a "clear and convincing" burden of proof, not a preponderance of the evidence standard. *See, e.g., Lengel*, 347 P.2d at 146 ("Properly the court would require clear and convincing proof before concluding that a person abandoned an 1885 water right, one of the oldest on a river in an arid or semiarid area.").

■■■ ¶ 24 Regardless of the burden of proof applied, we spoke clearly in both cases about the relationship between undecreed diversions and abandonment—use of a water right at an undecreed point of diversion does not evidence intent to abandon.[5] Further, Colorado water law strongly disfavors findings of abandonment. *See, e.g., Williams v. Midway Ranches Prop. Owners' Ass'n*, 938 P.2d 515, 527 (Colo.1997) ("Abandonment is not favored under Colorado water law.").

¶ 25 Still, the water court's order lacked clarity as to whether it found that the Foundation utilized the Tip Jack *water right*, as opposed to just the Tip Jack *Ditch*. In addition, the water court did not plainly differentiate among the three water rights at issue when concluding that the Foundation had rebutted the presumption of abandonment.

---

5. Even if a water court finds that the owner of a water right rebutted the presumption of abandonment with use of the water through an undecreed point of diversion, such use counts as a zero year in a change of water right case when calculating the historical beneficial consumptive use amount allocated to the right. *See Burlington Ditch Reservoir & Land Co. v. Metro Wastewater Reclamation Dist.*, 256 P.3d 645, 662–63 (Colo.2011) ("The calculation of consumptive use credits allowed through a change proceeding does not include water from an undecreed enlargement, even if there has been a long period of enlarged usage."); *Santa Fe Trail Ranches Prop. Owners Ass'n v. Simpson*, 990 P.2d 46, 59 (Colo.1999) (holding a water rights applicant could not substitute records of use made through an undecreed point of diversion to establish historical beneficial use). *Cf. In re Revised Abandonment List of Water Rights in Water Div. 2*, 2012 CO 35, ¶¶ 11–12, 276 P.3d 571, 574–75 (explaining that depending on the reason for not using a decreed point of diversion, for instance that it was washed out, the representative period for historic use may not include the period following the washout).

Specifically, in making its findings, the water court relied on the following evidence:

> As discussed in other sections of this order, such evidence includes Jim Hutton's maintenance of the ditches over the years; reserving use of the water rights in the 1991 conservation easement between the Huttons and the state of Colorado; pledging the water rights as collateral for a loan in 1995; creating the Foundation in 2000, which included the water rights; and leasing the land and water rights to Mr. Cure in 2000 or 2001.

However, use of the Tip Jack Ditch does not necessarily equate to use of the Tip Jack Ditch water right. Therefore, the water court must separately analyze use of the Tip Jack water right to determine whether the Foundation has successfully rebutted the presumption of abandonment through evidence excusing its nonuse of the decreed diversion point or lack of intent to abandon. We thus remand for further consideration of the Foundation's evidence of its intent not to abandon.[6]

### III. Conclusion

¶ 26 We hold that when the Engineers prove that the water right holder has not used the decreed point of diversion for ten years or more, the Engineers trigger the rebuttable presumption of abandonment under section 37–92–402(11). Once triggered, the burden shifts to the water right holder to demonstrate a lack of intent to abandon. Because the water court erroneously believed that proof of nonuse at the decreed point of diversion was insufficient to raise the presumption, it failed to require evidence excusing such nonuse in order to rebut the presumption. We therefore reverse the water court's judgment and remand for reconsideration of whether the Foundation met its burden of rebutting the presumption of abandonment.

---

6. The Engineers also point to the real estate transactions involving the ranch to demonstrate abandonment. Before his death in 1983, Roscoe transferred the entire ranch to his wife, Hazel, and his son, Jim. He transferred the land "with all appurtenances, subject to easements, restrictions, and reservations of record, if any," but did not explicitly discuss water rights. Hazel then conveyed, piece by piece, her interest in the land to Jim and his wife, Thelma. By 1986, Jim and Thelma Hutton owned the entire 4,000–acre ranch. While the first two deeds did not explicitly mention the water rights, the final conveyance transferred the land "with all water and water rights, ditch and ditch rights, and all irrigation equipment of every kind and character used in connection with the above described land." In

2000, Jim Hutton created the Foundation, using the ranch property to fund the Foundation's operations. This evidence, along with the Engineers' other points regarding lack of governmental records, is not persuasive. As the water court concluded, the lack of records is not necessarily indicative of the lack of use—it is the government's responsibility to properly maintain its records. Further, most of the legal documents that the Engineers argue demonstrate lack of intent reference either rights appurtenant to the land, which usually include water, or water rights expressly. Even if the Huttons did not explicitly identify each of their water rights in the documents in question, the water court was within its discretion not to infer intent to abandon.