Dr. Jerry **BARHAM**, Plaintiff–Appellant,

v.

**UNIVERSITY OF NORTHERN COLORADO, the Board of Trustees of the University of Northern Colorado, and Vincent Scalia, Defendants–Appellees.**

No. 96CA1422.

Colorado Court of Appeals,
Div. V.

Nov. 28, 1997.

Rehearing Denied Jan. 29, 1998.

Certiorari Denied Oct. 19, 1998.

Bucholtz & Bull, P.C., Alan H. Bucholtz, Denver, for Plaintiff-Appellant.

Hall & Evans, L.L.C., Pamela Skelton, Denver, for Defendants-Appellees.

Opinion by Judge RULAND.

In this action for judicial review pursuant to C.R.C.P. 106(a)(4), plaintiff, Jerry Barham, appeals from the district court's judgment denying his request to reverse the decision terminating his employment by defendant, University of Northern Colorado Board of Trustees. We affirm.

In 1993, plaintiff, a 29-year tenured professor, was charged by his Dean, defendant Vincent Scalia, with harassment, misuse and/or misappropriation of government property, conduct detrimental to the efficient and productive operation of the school, unacceptable job performance, and violations of the standards of professional conduct. The Dean alleged a pattern and practice of behavior warranting dismissal based on complaints by students, faculty, and staff.

Plaintiff was advised of the charges at the time his triennial evaluation was due. As a result, that evaluation process was not formally completed. Instead, plaintiff was told to leave the campus and not to contact faculty or staff pending completion of the Dean's investigation. Those restrictions were lifted two weeks later when the President formally suspended plaintiff with pay until resolution of the charges.

The University operates pursuant to policies, procedures, and regulations contained in the "Codification" (Code). Pursuant to Code § 3.8.6, the Dean's charges were submitted to the Faculty Senate and investigated by the Senate Welfare Committee. During the subsequent two years, various hearings were conducted at which plaintiff was represented by counsel and given the opportunity to present evidence, cross-examine witnesses, and argue his case.

By a majority vote, the Committee found clear and convincing evidence to support only two of the charges. Six voting members concluded that the charge of unacceptable job performance had been proven. Five voting members concluded that the charge of unprofessional conduct had been established.

The finding that plaintiff's job performance was unacceptable was based upon a number of factors. First, plaintiff had failed to obtain student evaluations in accordance with directions from his superiors and in compliance with the department's policy for the period from the spring of 1990 through the summer of 1992. Next, plaintiff's Department Chair had evaluated his teaching performance as "does not meet expectations." Third, a number of student complaints had been received concerning his teaching performance.

In addition, the Committee found that plaintiff had failed to make improvements to the laboratory used in teaching his courses even though the improvements were a priority of the administration and funds were available. Finally, plaintiff had failed to complete his research and to make revisions to his course textbook first published in 1978.

With reference to the charge of violating standards of professional behavior, a majority of the Committee found with record support that plaintiff repeatedly insulted, taunted, or challenged other colleagues and administrators "in a manner likely to provoke a violent or disorderly response."

Based upon the foregoing, a majority of the Committee recommended dismissal. Upon review of the Committee's report by the Faculty Senate pursuant to Code § 3.8.6.2, plaintiff alleged, and the Faculty Senate agreed, that he was not afforded due process when three members of the Committee were excused just prior to the last session of the investigation. Accordingly, the report of the original Committee, recommending dismissal, was set aside.

The Senate concluded that the Committee should be reconstituted by returning the absent members and that a "new hearing" should be conducted in which all of the members would participate. However, the Senate concluded that additional evidence and argument would be unnecessary.

The reconstituted Committee concluded its work and issued two reports. A minority report agreed with the original Committee that clear and convincing evidence supported dismissal based upon the two proven charges. A majority report concurred with the findings that the charges had been proven, but found that a history of departmental reorganization, changes of administrative leadership, obvious professional competition, and changes in academic focus were all mitigating factors. Consequently, these members recommended that plaintiff be granted a one-year probation. The majority report was reviewed and adopted by the Faculty Senate and then submitted to the President.

Pursuant to Code § 3.8.6.2, the President referred the Faculty Senate's report to the Board along with the record and certain comments. The Board reviewed the record, heard comments and argument, and then adopted the Committee's findings of fact. Considering the serious nature of the charges and the evidence of a history of such conduct without improvement, the Board concluded that a term of probation was not appropriate. The Board therefore adopted the severest sanction noted by the President and terminated plaintiff's employment.

## I.

Code § 3.8.6. provides for the termination of tenured faculty:

Faculty members holding tenure can be dismissed only for cause. This means 'a legally sufficient ground or reason; a cause which relates to a matter material to public interest; or a cause which is just and not arbitrary or capricious.'

■ Plaintiff first contends that the district court erred as a matter of law in concluding that the termination section was not impermissibly vague, thus violating his constitutional rights to substantive due process and equal protection. According to plaintiff, because the Board did not adopt regulations defining "cause" for termination, he was not given adequate prior notice of required professional standards or proscribed conduct. We are not persuaded.

■ In addressing a vagueness challenge to the Code, we must apply the same standards of review used for a statute or ordinance. See Casados v. City & County of Denver, 832 P.2d 1048 (Colo.App.1992). Thus, the Code is presumed to meet constitutional requirements, and the burden is on plaintiff to prove otherwise beyond a reasonable doubt. Stamm v. City & County of Denver, 856 P.2d 54 (Colo.App.1993).

■ The test for resolving a vagueness challenge is whether the questioned provision fails reasonably to forewarn persons of ordinary intelligence of the prohibited conduct and thus lends itself to arbitrary and discriminatory enforcement because it fails to provide explicit standards for those who apply it. People ex rel. Tooley v. Seven Thirty-Five East Colfax, Inc., 697 P.2d 348 (Colo. 1985).

However, our supreme court has determined that a statute requiring the director of the Department of Social Services to expunge certain records "upon good cause shown" is not invalid because this language in effect incorporates a requirement for substantial or legal justification. See Watso v. Colorado Department of Social Services, 841 P.2d 299 (Colo.1992). Further, in the context of termination of tenured faculty, our supreme court has also recognized that it is not feasible or necessary for the government to spell out in detail all conduct which will result in sanctions. See Weissman v. Board of Education, 190 Colo. 414, 547 P.2d 1267 (1976). Instead, prior decisional law has focused on whether fair warning of prohibited conduct is provided. See San Filippo v. Bongiovanni, 961 F.2d 1125 (3d Cir.1992).

Accordingly, if the general language authorizing dismissal is applied in conjunction with plaintiff's established duties as a professor, the provision in question satisfies constitutional requirements. See Weissman v. Board of Education, supra. Indeed, in situ-

ations of the type at issue, the Supreme Court has held that an employee's knowledge of his responsibilities pursuant to the employer/employee relationship may be considered in determining whether the employee has appropriate notice in the context of general language authorizing dismissal. *See Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

As a result, since the reasons for termination are restricted to a "legally sufficient ground" and inasmuch as plaintiff was a professor and informed by the Code and department policy of his obligations in that capacity, we conclude that the Code satisfies constitutional requirements.

Specifically, the Code details the procedure for faculty evaluations, the determination of annual goals and objectives, professional responsibilities, and academic obligations to students and colleagues. With reference to the Committee's findings regarding plaintiff's deficiencies, the Code authorizes each University department to adopt additional requirements, and it is undisputed that plaintiff's department requires annual student evaluations in four courses. Moreover, the failure to update the textbook, improve the lab, and the negative teaching evaluations do not comply with the intent of the Code provision governing his teaching responsibilities.

Additionally, the Board found, and the record of documents and direct testimony supports, that plaintiff was adequately warned by his supervisors some years prior to the dismissal proceedings that his teaching performance and professional conduct were unacceptable. As a result, we view plaintiff's reliance upon *Wilder v. Board of Education*, 944 P.2d 598 (Colo.App.1997) (*cert. granted* October 20, 1997) as misplaced. There, the division concluded that the dismissal of a tenured teacher could not be premised upon violation of a policy absent a finding that the teacher had actual knowledge of the policy or that the policy was contained in written materials he was required to read.

Finally, the record supports the conclusion that plaintiff, as a tenured professor for 29 years, charter member of the Faculty Senate, former department chairman, former member of the Advisory Committee on Faculty Evaluations, and former member of the Dean's Council, had ample prior notice of the standards of professional conduct and job performance required by the University under the Code.

## II.

■ Second, plaintiff contends that the Committee's and Board's reliance in part on standards that had not been formally adopted by the University invalidates his termination. Again, we are not persuaded.

As pertinent here, the Committee used the Code as primary authority governing the charges. As an "additional" authority, the Committee referred to the American Association of University Professors (AAUP) Policy Documents and Reports (1990 ed.). As a final barometer for the charge of unprofessional conduct, the Committee determined that violations of standards of professional conduct would have to be "sufficient enough to represent an affront to the professional sensibilities of the academic community."

As noted, the determination that plaintiff's job performance was unacceptable was based primarily upon specific provisions of the Code and the department's policy concerning student evaluations.

With reference to the breach of professional standards, while the Committee quoted the AAUP's Statement on Professional Ethics, this excerpt is substantially the same as Code § 3.10.5 regarding Academic Freedoms and Responsibilities. The only significant element distinguishing the AAUP statement from the Code provision refers to harassment, and that provision is not relevant here. Hence, the Board's error, if any, was harmless. *See* C.A.R. 35(e).

Finally, to the extent that the Committee relied upon the criterion of "professional sensibilities to the academic community," plaintiff fails to demonstrate in any manner that he was prejudiced by this concept.

## III.

Plaintiff's additional contentions focus on his claim that he was denied procedural due process rights because of the failure to follow

Code procedures in evaluating his job performance, in addressing grievances against and by him, and, ultimately, in conducting the dismissal process which led to his termination. The Board found that plaintiff's rights were not violated, that any procedural defects cited by plaintiff were harmless, and that plaintiff was accorded a full opportunity to be heard, to present testimony, and to develop a complete evidentiary record. The district court agreed, as do we.

■ The essence of procedural due process is fundamental fairness. This embodies adequate advance notice and an opportunity to be heard prior to state action resulting in the deprivation of a significant property interest, such as tenured employment. *See Mountain States Telephone & Telegraph v. Department of Labor*, 184 Colo. 334, 520 P.2d 586 (1974).

### A.

■ Plaintiff contends that completion of his triennial evaluation was a prerequisite to any dismissal action based on "unacceptable job performance." He argues that the option of remediation, available when an evaluation is unacceptable, was foreclosed when the dismissal hearing superseded the evaluation process. He further contends that, in effect, this protection constitutes the principal benefit of achieving tenured status.

The Board found that, while completion of the triennial evaluation would have been preferable, plaintiff's due process rights were not violated by the omission. Our review of the Code and the record support that determination.

Specifically, procedures for faculty evaluations and dismissals operate independently under the Code. The evaluation process determines faculty promotions, reappointments, tenure, and emeritus status. These reviews are for the stated purpose of encouraging and documenting individual achievement and to reward contributions toward University goals. And, this section of the Code does not mandate that the evaluation process be concluded prior to the initiation of dismissal proceedings. Proceedings for the dismissal of an instructor can be initiated at any time.

Conversely, if, as plaintiff suggests, the triennial evaluation must always be completed prior to initiation of dismissal proceedings, students could be required to accept three years of totally incompetent instruction before any remedial action could be taken. The Code should not be interpreted so as to reach an absurd result. *See American Respiratory Care Services v. Manager of Revenue*, 835 P.2d 623 (Colo.App.1992).

Moreover, plaintiff concedes that the triennial evaluation procedure includes virtually all the elements considered by the Committee during the dismissal hearing. As plaintiff's unsatisfactory job performance was one of two primary issues, his record of instruction, professional activity, and service were thoroughly investigated. Plaintiff had a full opportunity to present his case, offer testimony by peers within his discipline, and address all issues during the hearings.

Finally, the record confirms that remediation, in the form of a one-year probation, was an option considered and, in fact, recommended by the Committee and Senate. That the Board chose not to accept that alternative was an election authorized by the Code.

### B.

■ Plaintiff contends that his procedural due process rights were also violated when the Code's grievance procedures for students and faculty were allegedly circumvented by the dismissal hearing.

First, plaintiff contends that student complaints, used as one basis for the dismissal hearing, should first have been processed through the available Code procedure. Relying on *Shumate v. State Personnel Board*, 34 Colo.App. 393, 528 P.2d 404 (1974), plaintiff argues that when a state agency promulgates rules to protect due process rights of employees, those more stringent rules must be followed. The record does not support this claim.

As pertinent here, the Code grievance procedure is intended to afford *students* or *colleagues* an easily implemented means for appealing academic decisions. Thus, *Shumate* is inapposite. In addition, the Code does not require completion of the grievance proce-

dure before a dismissal action may be commenced.

## C.

■ Second, plaintiff contends that due process was violated and he was prejudiced when the dismissal hearing proceeded before resolution of his grievance against the Dean. Again, we are not persuaded.

The Code recognizes the right of all faculty members to seek redress of grievances within the University community. Plaintiff filed a grievance when he was initially put on administrative leave by the Dean. The Grievance Committee found that plaintiff's due process rights had been violated.

However, the Board determined that any defect in the Dean's action was harmless because of the President's finding of sufficient cause and formal suspension two weeks later.

While the Code has established an elaborate grievance procedure, which allows faculty members significant participation, it also reserves to the President and the Board the right to accept or reject their recommendations. And, although plaintiff was briefly denied his right to contact members of the University community, once the prohibition was lifted he had seven months in which to prepare his case. The record fails to support any claim of prejudice because plaintiff was immediately represented by counsel and was able to investigate and prepare to defend against the charges.

## D.

■ Plaintiff argues that the Board erroneously considered written comments, prepared by the University of Northern Colorado Provost (who is also the Vice President for University Affairs). Specifically, plaintiff argues that these comments were outside the permissible scope of the dismissal process. The record does not support this contention.

The Code anticipates and condones the participation of the Vice President for Academic Affairs throughout the proceedings. The Vice President may initiate dismissal proceedings, attend all hearings, and file written comments. Hence, consideration of the provost's comments was proper.

## E.

Plaintiff argues that witnesses did not testify under oath. However, neither the Code nor any state statute requires that an oath be administered.

## F.

■ Plaintiff argues that he was entitled to a new, full hearing when the Faculty Senate set aside the original Committee report. We find no basis to vacate the order.

Plaintiff did not dispute the sufficiency of the evidence to support the charges during his Board hearing. The Code does not require that each Committee member be present for each session of the Committee, and the record confirms that in fact not all Committee members were present for each hearing. As a result, the absent members necessarily relied upon the record of the proceedings for that session or sessions in reaching their decision.

Finally, it appears that when the excused members returned to the Committee, all records and transcripts were available for their review for the proceeding missed. Further, a majority of the reconstituted Committee changed its recommendation to the Board, thus indicating the influence of the previously excused members.

Under these circumstances, we find no due process violation.

## G.

Plaintiff argues that a due process violation occurred in the improper appointment of two Committee members. The record shows that plaintiff, although reluctant to waive his objection, ultimately agreed that the parties should defer to the Senate's determination that the Committee was duly constituted. Specifically, plaintiff in effect confirmed in correspondence his acceptance of these two members.

## H.

Finally, plaintiff argues that the Committee improperly considered evaluations conducted in 1991 and 1992. However, plaintiff encouraged the Board to consider his entire 29–year tenure with the University. This it did thereby concluding that the problems underlying the charges were long term. Specifically, the Board found that plaintiff's objectionable conduct, consequent warnings by his superiors, and his opportunity to improve dated back some years. In view of this determination, it is apparent that the two evaluations now challenged by plaintiff were of minimal consequence to the Board's decision to terminate.

We have considered and reject plaintiff's other contentions on appeal.

The judgment is affirmed.

KAPELKE and CASEBOLT, JJ., concur.