**MERIDIAN RANCH METROPOLITAN DISTRICT, Meridian Service Metropolitan District, and Cherokee Metropolitan District, Plaintiffs–Appellants,**

v.

**COLORADO GROUND WATER COMMISSION and Upper Black Squirrel Creek Ground Water Management District, Defendants–Appellees.**

No. 09CA0131.

Colorado Court of Appeals, Div. I.

Nov. 12, 2009.

Grimshaw & Harring, P.C., Wayne B. Schroeder, Jamie N. Cotter, Denver, Colorado, for Plaintiffs–Appellants Meridian Ranch Metropolitan District and Meridian Service Metropolitan District.

Felt Monson & Culichia, L.L.C., James W. Culichia, David M. Shohet, Colorado Springs, Colorado, for Plaintiff–Appellant Cherokee Metropolitan District.

John W. Suthers, Attorney General, Patrick Kowaleski, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee Colorado Ground Water Commission.

Trout, Raley, Montano, Witwer & Freeman, P.C., Peter D. Nichols, Lisa M. Thompson, Robert V. Trout, Denver, Colorado, for Defendant–Appellee Upper Black Squirrel Creek Ground Water Management District.

William H. Louis, County Attorney, M. Cole Emmons, Assistant County Attorney, Colorado Springs, Colorado, for Amicus Curiae Board of County Commissioners of El Paso County, Colorado.

Epperson and McClary, P.C., Donald F. McClary, Andrew F. McClary, Fort Morgan, Colorado, for Amicus Curiae North Kiowa–Bijou Groundwater Management District.

Lind, Lawrence & Ottenhoff, L.L.P., P. Andrew Jones, Windsor, Colorado, for Amicus Curiae Lost Creek Ground Water Management District.

Vranesh & Raisch, L.L.P., Michael D. Shimmin, Boulder, Colorado, for Amici Curiae Marks Butte, Frenchman, Sand Hills, Central Yuma, W–Y, and Plains Ground Water Management Districts.

Opinion by Judge DAILEY.

Plaintiffs, Meridian Ranch Metropolitan District, Meridian Service Metropolitan District, and Cherokee Metropolitan District (collectively, the Metro Districts), appeal a district court's judgment that, consistent with a ruling from the Colorado Ground Water Commission (the Commission), the Upper Black Squirrel Creek Ground Water Management District (the Management District) could adopt certain rules restricting the amount of underground water that could be withdrawn from alluvial and Denver Basin wells. We affirm.

## I. Background

The Metro Districts are special districts organized under title 32 of the Colorado Revised Statutes. They own and operate wells located within the Management District, which was organized in 1979 under the Ground Water Management Act, §§ 37–90–101 to–143, C.R.S.2009.[1]

As pertinent here, the Metro Districts' wells are operated under permits issued by the Commission. Those permits authorized the withdrawal of specified amounts of water from the wells.

The Management District adopted certain rules, Rules 17, 18, and 19 (the Disputed Rules), in an attempt to prevent a continuing decline in groundwater within its designated water basin. The rules restricted water withdrawal levels below those set by the Commission for permitted wells (including those re-permitted following a change in use proceeding) that supply water to subdivisions, single family residences outside subdivisions, and commercial businesses.

Pursuant to section 37–90–131(1)(b), C.R.S. 2009, the Metro Districts appealed the Management District's adoption of these rules to the Commission. On two occasions, a Commission-designated hearing officer determined that the rules were invalid. On the first occasion, the hearing officer held that

the Management District lacked the authority to adopt the rules; on the second, he held that the rules were unreasonable. Ultimately, however, the Commission overturned the hearing officer's determinations and upheld the rules.

As most pertinent to this appeal, the Commission rejected the Metro Districts' contention that the Management District lacked the statutory authority to adopt rules "limit[ing] the amount of water to be withdrawn from the wells beyond that allowed by the permit issued by the Commission":

> The Commission construes the provisions of § 37–90–130, C.R.S., to, inter alia, to allow a [Management] District to regulate the production of wells and to determine limitations which should be made on the withdrawal of water from the aquifer, after issuance of a permit by the Commission. The statute further provides, at § 37–90–130(2)(e), C.R.S., that a [Management] District has the authority to promulgate reasonable rules and regulations "for the purpose of conserving, preserving, protecting, and recharging the ground water of the ground water aquifer...." Consistent with § 37–90–131(1)(a) and (2), C.R.S., it is also recognized that a [Management] District has the authority to regulate the amount of water to be withdrawn from wells, and to ensure the proper conservation of ground water within the [Management] District. The Commission interprets these statutory provisions, when read in their entirety, as allowing the [Management] District to adopt reasonable rules and regulations, restricting the amount of water to be withdrawn from a well, beyond that allowed by the Commission.

Following entry of the Commission's final decision, the Metro Districts sought judicial review before a designated groundwater judge of the district court under sections 37–90–131(1)(b) and 37–90–115, C.R.S.2009. The designated groundwater judge upheld

---

1. "Special districts are political subdivisions of the state ... created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them." *Risen v. Cucharas Sanitation & Water Dist.,* 32 P.3d 596, 599 (Colo.App.2001). Similarly, a groundwater

management district is "a governmental subdivision of the [S]tate of Colorado and a body corporate with all the powers of a public or quasi-municipal corporation." § 37–90–124(5), C.R.S. 2009.

the Commission's determination, finding that, although only the Commission is authorized to issue well permits designating the amount of water a user may pump,

[o]nce a permit is issued, [a] Management District has broad authority to administer and regulate the water priorities in the basin. In this instance, the [Management] District considered a variety of factors regarding the continuing depletion of water availability in the basin. It thus concluded that it was necessary to implement broader limits on all withdrawals within the entire basin. It was merely exercising inherit [sic] powers that it has been granted by the legislature. While broad changes to permitted pumping levels are generally issues that the Commission might decide, CRS 37–90–130(2)(j) makes clear that the legislature envisioned those powers being exercised by the District as well.

The Metro Districts appealed this decision to our court. While the appeal was pending, they unsuccessfully applied, under C.A.R. 50, to the supreme court for prejudgment certiorari review.

## II. Jurisdiction

■ Initially, we address our jurisdiction. Although neither party questioned the jurisdiction of this court, it is an issue that we may raise and resolve sua sponte. *Archuleta v. Gomez*, 140 P.3d 281, 283 (Colo.App.2006).

■ The court of appeals generally has jurisdiction over appeals from final judgments of the district courts, § 13–4–102(1), C.R.S.2009. But it does not have jurisdiction over "[w]ater cases involving priorities or adjudications." § 13–4–102(1)(d), C.R.S.2009. The supreme court has initial appellate jurisdiction in cases of that type. *See City of Aurora ex rel. Util. Enter. v. Colorado State Engineer*, 105 P.3d 595, 605 n. 10 (Colo.2005).

■ Although the parties and the issues here (statutory interpretation and the relative powers of the Commission and the Management District) are customarily associated

with direct appeals to the supreme court[2], we nonetheless conclude that we have initial jurisdiction over this appeal.

This is, without doubt, a "water case." But it does not involve "priorities or adjudications." This case does not present a question of relative rights, as between water users, and thus it does not "involve" priorities. Nor, for the following reasons, does it present a question of an "adjudication."

■ "[A]n adjudication 'involves a determination of rights, duties, or obligations of identifiable parties by applying existing legal standards to facts developed at a hearing conducted for the purpose of resolving the particular interests in question.'" *Trans Shuttle, Inc. v. Public Utils. Comm'n*, 89 P.3d 398, 408 (Colo.2004) (quoting *AviComm, Inc. v. Pub. Utils. Comm'n*, 955 P.2d 1023, 1030 (Colo.1998)); *see also Archuleta*, 140 P.3d at 284 ("A water court's adjudication quantifies an existing beneficial use of water and establishes a priority date for the water right.").

The present appeal does not involve a determination of rights, duties, or obligations of identifiable parties through the application of existing legal standards; rather, it involves the creation of new legal standards through an agency's rule-making process. *See Colorado Ground Water Comm'n v. Eagle Peak Farms, Ltd.*, 919 P.2d 212, 216–17 (Colo. 1996) (because "[r]ule[-]making does not involve the application of the policy to any specific person," it is legislative, rather than adjudicative, in nature).

We recognize that the supreme court has recently held that not all rulemaking falls outside of the concept of "adjudication." In *Cotton Creek Circles, LLC v. Rio Grande Water Conservation District*, 218 P.3d 1098 (Colo.2009), the supreme court upheld an award of C.R.C.P. 54(d) "prevailing party" costs in a water court proceeding involving protests to rules proposed by the state engineer. The supreme court concluded that the water court's review of the proposed rules, conducted pursuant to section 37–92–304,

2. *See, e.g., Colorado Ground Water Comm'n v. North Kiowa–Bijou Groundwater Mgmt. Dist.*, 77 P.3d 62 (Colo.2003); *Upper Black Squirrel Creek*

*Ground Water Mgmt. Dist. v. Goss*, 993 P.2d 1177 (Colo.2000).

C.R.S.2009, of the Water Right Determination and Administration Act of 1969 (the 1969 Act), was an "adjudication."

In reaching this conclusion, however, the court distinguished state engineer rulemaking from other types of rulemaking. As the supreme court noted, under the 1969 Act: (1) the state engineer was not required "to conduct a public hearing on proposed rules and regulations such as is required by the Colorado Administrative Procedure Act ('CAPA')," *id.* at 1102; (2) the water court proceeding "provides the only opportunity for interested parties to have any meaningful involvement in the water rulemaking process," *id.* at 1102; (3) "section 37–92–501(3)(a) explicitly states that a party wishing to protest proposed rules and regulations is to follow the trial-like procedure codified in section 37–92–304, the section governing protests to a water rights application," *id.* at 1103; and (4) "[u]nlike a quasi-legislative proceeding, the rules at issue were proposed to the water court and litigated through the use of witness testimony rather than on review of an administrative record," *id.* at 1103.

The circumstances that made water court review of rules proposed by the state engineer an "adjudication" are not present here. Like agencies governed by the CAPA, local management districts may not adopt rules without first conducting, upon proper notice, a public hearing. Section 37–90–131(1)(a), C.R.S.2009. Further, the rules and regulations adopted by local management districts are subject to an appeal to the Commission, which has the authority to affirm, reject, or (with the management district's consent) modify the rules. Section 37–90–131(1)(b), C.R.S.2009. Only then are local management district rules reviewable in district court upon review of the administrative record. Sections 37–90–131(1)(b), 37–90–115, C.R.S.2009.

Because the rulemaking process here is closely akin to that prescribed in the CAPA, and because we regularly exercise jurisdiction in appeals involving statutory interpretation of an agency's rulemaking authority, *see, e.g., Sears v. Romer,* 928 P.2d 745, 751–52 (Colo.App.1996) (analyzing regulations promulgated under Outfitters and Guides Act),

we perceive no reason why we would not have jurisdiction to determine the merits of the Metro Districts' appeal. *Cf. Archuleta,* 140 P.3d at 284 (court of appeals had appellate jurisdiction over final judgment entered by district court and involving water law issues); *Eagle Peak Farms, Ltd. v. Lost Creek Ground Water Mgmt. Dist.,* 7 P.3d 1006, 1008 (Colo.App.1999) (supreme court transferred jurisdiction to court of appeals in a case involving statutory interpretation even though underlying facts involved water matters).

## III. The Management District's Authority to Adopt the Disputed Rules

The Metro Districts contend that the Management District lacked statutory authority to adopt the Disputed Rules. More specifically, the Metro Districts assert that under the Ground Water Management Act, the Management District is not authorized to enact rules that effect changes to the amount of water allowed to be withdrawn under existing permits issued by the Commission. Consequently, the Metro Districts argue that both the Commission and the district court erred in upholding the Disputed Rules. For the following reasons, we are not persuaded.

The Management District's authority to adopt the Disputed Rules turns upon an interpretation of the Ground Water Management Act, which presents a question of law subject to de novo review by this court. *See Ferrel v. Colo. Dep't of Corr.,* 179 P.3d 178, 182 (Colo.App.2007) (statutory interpretation a question of law reviewed de novo).

When construing a statute, a court must ascertain and give effect to the intent of the General Assembly and refrain from rendering a judgment that is inconsistent with that intent. *Trappers Lake Lodge & Resort, LLC v. Colo. Dep't of Revenue,* 179 P.3d 198, 199 (Colo.App.2007). To determine legislative intent, we look first to the words of the statute. *Asphalt Specialties, Co., Inc. v. City of Commerce City,* 218 P.3d 741, 745 (Colo.App. 2009).

We read the statute as a whole "to give 'consistent, harmonious and sensible effect to all of its parts,'" *Colo. Water Conservation*

*Bd. v. Upper Gunnison River Conservancy Dist.,* 109 P.3d 585, 593 (Colo.2005) (quoting *Bd. of County Comm'rs v. Costilla County Conservancy Dist.,* 88 P.3d 1188, 1192 (Colo.2004)), and we defer to the interpretation of a statute by the agency charged with its administration, unless that interpretation is inconsistent with the clear language of the statute or legislative intent. *Heinicke v. Indus. Claims Appeals Office,* 197 P.3d 220, 222 (Colo.App.2008).

In *North Kiowa–Bijou Management District v. Ground Water Commission,* 180 Colo. 313, 505 P.2d 377 (1973), the supreme court described the basic thrust of the Ground Water Management Act:

> The Act separates certain water which it terms as "designated ground water" from the system of appropriation for surface water systems, and it creates a permit system for the allocation and use of ground waters within designated ground water basins. Appropriators of the designated ground waters are required to obtain a permit for their appropriations and the Act establishes a system of prior appropriation, similar in operation to the system regulating surface water rights, to regulate the water rights of the ground water users. By the terms of the Act, its administration and enforcement are placed in the Ground Water Commission, the State Engineer, and locally formed ground water management districts.

*Id.* at 317–18, 505 P.2d at 379–80 (citations omitted).

We are not, in this case, concerned with the actions, duties, powers, or authority of the State Engineer; instead, we are concerned only with the actions, duties, powers, and authority of the Commission and the Management District.

Section 37–90–107(8), C.R.S.2009, provides the Commission with "the exclusive authority to issue or deny well permits under this section." In issuing a final permit, the Commission "determines [an] applicant's use right, that is, a specific entitlement to use a quantity of designated Denver Basin ground water underneath the land." *Colorado Ground Water Comm'n v. North Kiowa–Bijou Groundwater Mgmt. Dist.,* 77 P.3d 62, 77 (Colo.2003). "Any such commission approved determination shall be considered a final determination of the amount of ground water so determined...." § 37–90–107(7)(c)(III), C.R.S.2009.[3]

Although the issuance of a final permit represents a "final determination" of groundwater rights, in this context, a "final determination" has a somewhat different meaning from that applied in the context of surface water rights. At root, the difference lies in the distinction between renewable and nonrenewable water resources:

> Underground water basins require management that is different from the management of surface streams and underground waters tributary to such streams. In the case of the latter waters, seasonal regulation of diversion by junior appropriators can effectively protect the interests of more senior appropriators and no long range harm can come of over appropriations since the streams are subject to seasonal recharge. The underground water dealt with by [the Ground Water Management Act] is not subject to the same ready replenishment enjoyed by surface streams and tributary ground water. It is possible for water to be withdrawn from the aquifer in a rate in excess of the annual recharge creating what is called a mining condition. Unless the rate of pumping is regulated, mining must ultimately result in lowering the water balance below the level from which water may be economically withdrawn. Due to the slow rate at which underground waters flow through and into the aquifer, it may be many years before a reasonable water level may be restored to a mined aquifer.

*Fundingsland v. Colorado Ground Water Comm'n,* 171 Colo. 487, 496, 468 P.2d 835, 839 (1970); *see also Upper Black Squirrel Creek Ground Water Mgmt. Dist. v. Goss,*

---

**3.** "Final permits issued by the Commission ... serve a function analogous to that of absolute decrees issued by the Water Court." Veronica A. Sperling and David M. Brown, *Outline of Colora-* *do Ground Water Law,* 1 U. Denv. Water L.Rev. 275, 283 (1998); *see North Kiowa–Bijou,* 77 P.3d at 75–76 (citing Sperling and Brown's article for the nearly identical proposition).

993 P.2d 1177, 1183 (Colo.2000) (quoting the above-mentioned passage from *Fundingsland* ); *North Kiowa–Bijou,* 77 P.3d at 80 ("surface waters are replenished annually, whereas pumping that exceeds recharge will eventually deplete the usable water in the Denver Basin Aquifers").

Thus, in designated groundwater areas, "[w]ell users are not entitled to command the aquifer through a diversion that prevents other permittees from enjoying reasonable use of the ground water resource that is being depleted." *Goss,* 993 P.2d at 1189; *see Danielson v. Kerbs Ag., Inc.,* 646 P.2d 363, 370–71 (Colo.1982) ("Unlike the appropriation doctrine as applied to a natural stream, where appropriation of water is permitted so long as there is water in the stream, the doctrine is also modified when applied to designated ground water to insure that no more than a reasonable depletion, as determined by the Commission, occurs in the aquifer.").

To this end, well users have no right to the maintenance of historical water pumping levels. *See* § 37–90–102(1), C.R.S.2009 ("Prior appropriations of ground water should be protected and reasonable ground water pumping levels maintained, but not to include the maintenance of historical water levels."); § 37–90–111(1)(a), C.R.S.2009 (providing that a prior designated groundwater appropriator is not entitled to maintenance of the historic water level, or any other level below which water still can be economically extracted when the total economic pattern of the particular designated groundwater basin is considered); *Gallegos v. Colorado Ground Water Comm'n,* 147 P.3d 20, 27 (Colo.2006) ("Although the rights of prior appropriators are to be protected under the [Ground Water] Management Act, that protection does not extend to the maintenance of historic water levels.").

By statute, the Commission, but not a management district, is authorized to approve requested changes to a permit. *See* § 37–90–111(1)(g), C.R.S.2009 (Commission empowered to approve changes to permits);

*Goss,* 993 P.2d at 1190 n. 24 (management district lacks authority to approve changes to a permit).[4]

■ The issues presented by this case are (1) whether there are other means, besides a change to a permit, by which a well user's right to use groundwater may be reduced; and (2) whether a management district is authorized, in conjunction with the Commission, to utilize such means. The Commission and the Management District, the entities charged with the responsibility of administering the Ground Water Management Act, answer both questions, "yes"; we agree.

Under section 37–90–111(1), C.R.S.2009, the Commission is empowered, among other things,

(a) To supervise and control the exercise and administration of all rights acquired to the use of designated ground water. *In the exercise of this power it may, by summary order, prohibit or limit withdrawal of water from any well during any period* that it determines that such withdrawal of water from said well would cause unreasonable injury to prior appropriators; except that nothing in this article shall be construed as entitling any prior designated ground water appropriator to the maintenance of the historic water level or any other level below which water still can be economically extracted when the total economic pattern of the particular designated ground water basin is considered. . . .

(b) *To establish a reasonable ground water pumping level in an area having a common designated ground water supply.* Water in wells shall not be deemed available to fill the water right therefor if withdrawal therefrom of the amount called for by such right would, contrary to the declared policy of this article, unreasonably affect any prior water right or result in withdrawing the ground water supply at a rate materially in excess of the reasonably anticipated average rate of future recharge.

. . . .

---

**4.** The text of section 37–90–111(1)(g) suggests that, in most instances, requested changes to a permit will involve requests to increase, not de- crease, the volume of groundwater appropriation.

(e) *To order the total or partial discontinuance of any diversion within a ground water basin* to the extent that the water being diverted is not necessary for application to a beneficial use;

. . . .

(h) *To adopt rules* necessary to carry out the provisions of this article.

(Emphases added.)

Under the emphasized portions of section 37–90–111(1), the Commission has the authority to reduce water pumping levels for well users by means other than making changes to permits. Indeed, by virtue of the emphasized language in section 37–90–111(b) and (h), the Commission could do so by rule.

Significantly, section 37–90–111(3), C.R.S. 2009, requires the Commission to confer and consult with a local management district in the affected areas, if any such management district exists, before "promulgating any orders or regulations which would affect the district in general."

Even more significant, however, the Commission's statutory powers are subject to a considerable limitation. Under section 37–90–111(1), the Commission is empowered to act "[i]n the administration and enforcement of this article and in the effectuation of the policy of this state to conserve its designated ground water resources and for the protection of vested rights . . . *except to the extent that similar authority is vested in ground water management districts pursuant to section 37–90–130(2)*." (Emphasis added.)

The question here, then, is whether a management district has "similar authority" under section 37–90–130(2), C.R.S.2009, to restrict permitted well users' water use, and more particularly, to do so by means of rule or regulation.

Section 37–90–130(2) provides, in pertinent part:

*After the issuance of any well permit* for the use of ground water within the district by the ground water commission as provided in sections 37–90–107 and 37–90–108, *the district board has the authority to regulate the use, control, and conservation of the ground water* of the district covered by such permit by any one or more of the

following methods, *but the proposed controls, regulations, or conservation measures shall be subject to review and final approval by the ground water commission* if objection is made in accordance with section 37–90–131:

(a) *To provide for the spacing of wells* producing from the ground water aquifer or subdivision thereof *and to regulate the production therefrom so as to minimize as far as practicable the lowering of the water table* or the reduction of the artesian pressure;

. . .

(c) *To develop comprehensive plans for the most efficient use of the water of the ground water aquifer or subdivision thereof* and for the control and prevention of waste of such water, which plans shall specify in such detail as may be practicable the acts, procedure, performance, and avoidance which are or may be necessary to effect such plans, including specifications therefor; *to* carry out research projects, develop information, and *determine limitations, if any, which should be made on the withdrawal of water from the ground water aquifer or subdivisions thereof;* to collect and preserve information regarding the use of such water and the practicability of recharge of the ground water aquifer; and to publish such plans and information and bring them to the notice and attention of the users of such ground water within the district and to encourage their adoption and execution;

. . .

(e) *To promulgate reasonable rules and regulations for the purpose of conserving, preserving, protecting, and recharging the ground water* of the ground water aquifer or subdivision thereof, in conformity with the provisions of this article;

. . .

(g) In the control and administration of the quantity of ground water extracted from the aquifer, to adopt such devices, procedures, measures, or methods as it deems appropriate to effectuate this purpose;

. . .

(j) *To exercise such other administrative and regulatory authority* concerning the ground waters of the district *as, without the existence of the district, would otherwise be exercised by the ground water commission.*

(Emphases added.)

In our view, section 37–90–130(2) confers upon a management district, after the issuance of a well permit, authority "similar" to that of the Commission in regulating water pumping levels by means of rule or regulation. *See* § 37–90–130(2)(a) (management district authorized to "regulate the use, control, and conservation of the ground water" through "controls, regulations, or conservation measures"); § 37–90–130(2)(b) (management district authorized "to regulate the production [from wells] so as to minimize as far as practicable the lowering of the water table"); § 37–90–130(2)(c) (management district authorized to "determine limitations, if any, which should be made on the withdrawal of water from the ground water aquifer or subdivisions thereof"); § 37–90–130(2)(e) (management district authorized to "promulgate reasonable rules and regulations for the purpose of conserving, preserving, protecting, and recharging the ground water"); § 37–90–130(2)(j) (management district authorized to "exercise such other administrative and regulatory authority concerning the ground waters of the district as, without the existence of the district, would otherwise be exercised by the ground water commission"); *cf. Goss,* 993 P.2d at 1188 (management district was authorized, after issuance of permits, to exercise a power (i.e., to issue curtailment orders) which was specifically set forth only in the statute detailing the powers of the commission).

There is one caveat to a management district's ability to reduce, via rule-making, allowable water withdrawal levels: any "controls, regulations, or conservation measures" proposed by a management district are "subject to review and final approval by the

ground water commission" upon proper objection. § 37–90–130(2)(a).[5]

Here, in accord with statutory authority and procedure, the Management District adopted rules regulating the withdrawal of groundwater, which rules, upon the Metro Districts' objection, were reviewed and approved by the Commission. No more was required to validate them.

In reaching this conclusion, we necessarily reject the Metro Districts' related argument that the Management District's Disputed Rules were preempted by the more specific authority delegated to the Commission by the Ground Water Management Act. *See generally Dep't of Transp. v. City of Idaho Springs,* 192 P.3d 490, 495–96 (Colo.App. 2008) (noting the three ways in which a state statute may preempt a local regulation (i.e., (1) expressly, (2) inferentially, and (3) operationally) and finding no basis for express, implied, or operational preemption of entity's action).

### IV.  The Reasonableness of the Disputed Rules

■ In their statement of issues in their brief, the Metro Districts also appeared to present the question of whether the district court erred by concluding the Disputed Rules were not unreasonable or an abuse of discretion. Because, however, the Metro Districts did not develop any argument with respect to this point in their briefs, we do not consider it. *See, e.g., People in Interest of D.B–J.,* 89 P.3d 530, 531 (Colo.App.2004) (declining to address contention lacking references to supporting facts, specific arguments, or authorities); *see also United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim [for appeal].").

### V.  Due Process

■ We reject the Metro Districts' contention that the Disputed Rules impair vest-

---

**5.** Section 37–90–131(1)(a), C.R.S.2009, provides for notice and public hearing in connection with a management district's adoption of "controls, regulations, or conservation measures ... necessary in order to ensure the proper conservation of ground water within the district." Section

37–90–131(1)(b), C.R.S.2009, provides for an appeal to the Commission of any adopted control or conservation measures or regulations, and authorizes the Commission to affirm, reject, or (with the district's consent) modify the measures or regulations.

ed water use rights in violation of the federal and state constitutional guarantees of procedural due process.

■ Both the federal and state constitutions mandate that a person may not be deprived by the state of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; Colo. Const. art. II, § 25. The essence of procedural due process is fundamental fairness; this embodies adequate advance notice and opportunity to be heard prior to state action resulting in deprivation of a significant property interest. *Barham v. Univ. of Northern Colorado*, 964 P.2d 545, 550 (Colo.App.1997).

Here, the Management District exercised its statutory authority to promulgate rules, after providing notice and an opportunity to be heard at a public hearing. In accordance with the statutes, the rules were then submitted to and approved by the Commission.

There was no violation of procedural due process in effecting a change to a vested, but not unchangeable, property right in groundwater. *See Goss*, 993 P.2d at 1182 (General Assembly has plenary authority over the administration and allocation of groundwater that, as here, is not tributary to a natural stream); *see also* § 37–90–102(1) (well users have no right to the "maintenance of historical water levels").

### VI. Additional Arguments Raised by Amici Curiae

Three amicus curiae briefs were filed in connection with this appeal. The El Paso County Board of County Commissioners filed one in support of the Metro Districts, urging us to conclude that the district court erred in upholding the Disputed Rules; the other two were filed by various local groundwater management districts in support of the Management District, urging us to affirm the district court's order.

We do not consider any additional issues or arguments raised by these amici curiae and not by the parties. *Gorman v. Tucker*, 961 P.2d 1126, 1131 (Colo.1998).

### VII. Attorney Fees

The Management District has requested an award of attorney fees incurred on appeal, pursuant to section 24–4–106(8), C.R.S.2009.

Initially, we question whether section 24–4–106 is a proper basis for an attorney fee award: judicial review was sought here not of "a rule adopted by the ground water commission" (an appeal of which would be taken pursuant to section 24–4–106), *see* § 37–90–115(2), C.R.S.2009, but of a rule adopted by a management district (for which review would be taken pursuant to sections 37–90–115(1) and 37–90–131(1)(b)).

■ In any event, attorney fees are awardable under section 24–4–106(8) only if a court finds that a "proceeding contesting the jurisdiction or authority of the agency is frivolous or brought for the purpose of delay." After considering the contents of the briefs filed by the parties and amici curiae, we cannot conclude that the appeal was frivolous or prosecuted for the purpose of achieving delay. Consequently, we deny the Management District's request for fees.

The judgment is affirmed.

Judge TAUBMAN and Judge BOORAS concur.